[No. 22809-6-III. Division Three. April 5, 2005.]

The Estate of Matthew Davis et al., *Appellants*, v. The Department of Corrections et al., *Respondents*.

---

834

*Charles S. Hamilton III*, for appellants.

*Robert M. McKenna, Attorney General*, and *Michael P. Lynch, Senior Counsel*, and *Catherine Hendricks, Jarold P. Cartwright*, and *Carl P. Warring, Assistants*; and *Michael E. McFarland, Jr.* (of *Evans, Craven & Lackie, P.S.*), for respondents.

¶1 KATO, C.J. — James Spurgetis, the executor of Matthew Davis's estate, and Mr. Davis's parents sued Stevens County (County) and the State of Washington for wrongful death, claiming the County was negligent in failing to screen the person who murdered Mr. Davis and the State was negligent for failing to supervise the murderer. The court granted summary judgment to the County and the

State. Because neither the County nor the State had a duty to Mr. Davis, we affirm the dismissals.

¶2 Claiming the court erred by failing to dismiss the parents' claims pursuant to RCW 4.24.010, the State cross-appeals. We reverse the trial court and dismiss the parents' claims as well.

¶3 On January 28, 1999, Andrew Erickson was convicted of taking a motor vehicle without permission, subjecting him to community supervision by the Department of Corrections. Norm Scott was his Community Corrections Officer. On June 8, he learned by a urine test that Mr. Erickson had smoked marijuana, a violation of the terms of his community supervision. Mr. Scott issued an order for his arrest.

¶4 On June 9, Mr. Scott received a call from Mr. Erickson, who said he was going to commit suicide. A deputy sheriff went to Mr. Erickson's home and placed him in custody.

¶5 On June 18, Mr. Erickson stipulated he used and possessed marijuana. The court modified his existing community supervision sentence by imposing an additional 120 days of confinement, with 111 days suspended and credit for 9 days served, on the condition that Mr. Erickson undergo a psychological anger control evaluation and comply with the resulting treatment requirements.

¶6 Mr. Erickson met with William Jones, a licensed mental health counselor at Stevens County Counseling, on June 24. Mr. Scott had called Mr. Jones asking him to perform a psychological evaluation of Mr. Erickson. Mr. Jones was told in the conversation that Mr. Erickson was upset about a breakup with his girl friend and was asking for help. Mr. Scott also told the counselor about Mr. Erickson's history of nonviolent crimes.

¶7 Mr. Jones said he could not perform a psychological evaluation because he was not a psychologist. But he offered to do an initial assessment to determine if Mr. Erickson would benefit from further counseling.

¶8 Mr. Jones's initial assessment was that Mr. Erickson suffered from depression and other nonspecific disorders, although he was a congenial young man. Mr. Jones was initially concerned that Mr. Erickson might be a danger to himself, but Mr. Erickson denied such thoughts. Mr. Jones also indicated Mr. Erickson denied being violent and he did not intend to harm anyone. Mr. Jones determined he should be referred to a clinical services program for individual therapy.

¶9 On July 6, 1999, Matthew Davis, Aaron Dalager,[1] Andrew Erickson, and Richard Tullis were together in Chewelah, Washington. After drinking alcohol and smoking marijuana, they took rifles from the Dalager home to go target shooting. While walking along the railroad tracks, Mr. Erickson, without warning, started shooting Mr. Davis. The other two men participated by shooting and stabbing the victim. Mr. Davis, 17 years old, was killed. Mr. Erickson was eventually convicted of murder. *See State v. Erickson*, 108 Wn. App. 732, 744, 33 P.3d 85 (2001), *review denied*, 146 Wn.2d 1005 (2002).

¶10 On October 2, 2001, Matthew Davis's estate filed a complaint against the Washington State Department of Corrections and Stevens County. The complaint alleged the State was negligent in its supervision of Mr. Erickson, thus proximately causing Mr. Davis's death. The complaint further alleged Stevens County was grossly negligent and acted in bad faith in its mental health screening of Mr. Erickson, also proximately causing Mr. Davis's death. The estate thereafter amended its complaint to add Mr. Davis's parents as plaintiffs, claiming general damages.

¶11 Arguing it was immune from liability pursuant to RCW 71.05.120, Stevens County moved for summary judgment. It further contended it owed no duty to Mr. Davis and did not proximately cause his death. The court granted the motion.

---

[1] The spelling of the name "Dalager" appears to be correct from the record despite the spelling of "Delager" in the caption.

¶12 The State also moved for summary judgment on the grounds that it neither had a duty to Mr. Davis nor proximately caused his death. The State further asserted the parents were not statutory heirs entitled to general damages. A different judge determined the estate was collaterally estopped from bringing a negligence claim because in the earlier motion, the first judge had determined Mr. Erickson was not the proximate cause of Mr. Davis's death. It also found the murder was not foreseeable and therefore proximate cause could not be established. The court granted the State's motion for summary judgment with respect to the estate's claims, but rejected the argument the parents were not statutory heirs entitled to general damages and denied summary judgment on their claim. The estate appeals; the State cross-appeals.

¶13 On an appeal from summary judgment, we thus engage in the same inquiry as the trial court, considering the facts and reasonable inferences from them in the light most favorable to the nonmoving parties. *Taggart v. State*, 118 Wn.2d 195, 199, 822 P.2d 243 (1992). Summary judgment is appropriate " 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Greater Harbor 2000 v. City of Seattle*, 132 Wn.2d 267, 278, 937 P.2d 1082 (1997) (quoting CR 56(c)).

■ ■ ¶14 The trial court determined Stevens County was entitled to summary judgment because it was immune under RCW 71.05.120, which provides:

(1) No officer of a public or private agency, nor the superintendent, professional person in charge, his or her professional designee, or attending staff of any such agency, nor any public official performing functions necessary to the administration of this chapter, nor peace officer responsible for detaining a person pursuant to this chapter, nor any county designated mental health professional, nor the state, a unit of local government, or an evaluation and treatment facility shall be

civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence.

(2) This section does not relieve a person from giving the required notices under RCW 71.05.330(2) or 71.05.340(1)(b), or the duty to warn or to take reasonable precautions to provide protection from violent behavior where the patient has communicated an actual threat of physical violence against a reasonably identifiable victim or victims. The duty to warn or to take reasonable precautions to provide protection from violent behavior is discharged if reasonable efforts are made to communicate the threat to the victim or victims and to law enforcement personnel.

Pursuant to this statute, a mental health professional is immune from tort liability in the performance of his duties unless he acted in bad faith or with gross negligence. *Spencer v. King County*, 39 Wn. App. 201, 205, 692 P.2d 874 (1984), *review denied*, 103 Wn.2d 1035 (1985), *overruled on other grounds by Frost v. City of Walla Walla*, 106 Wn.2d 669, 724 P.2d 1017 (1986). Gross negligence is that which is substantially and appreciably greater than ordinary negligence. *Id.* at 206.

¶15 The estate does not claim Mr. Jones acted in bad faith. Rather, it contends RCW 71.05.120 does not apply because Mr. Jones was not making an assessment under this chapter.

¶16 The immunity provision in RCW 71.05.120 applies to a mental health professional's duties under the involuntary commitment law, chapter 71.05 RCW. *Spencer*, 39 Wn. App. at 205. The chapter relates to involuntary commitment of a person with mental disorders. Mr. Jones testified he was not making an assessment under this chapter. The estate's amended complaint, however, alleges Mr. Jones evaluated Mr. Erickson for the purpose of providing mental health assistance and supervision. The complaint then alleges Mr. Jones failed to provide assistance or take any

action, despite the need to do so. To the extent the estate alleged Mr. Jones was liable because he failed to detain Mr. Erickson, the immunity provision of RCW 71.05.120 applies because the only authority for him to detain Mr. Erickson was under chapter 71.05 RCW.

¶17 Although the complaint does not specifically cite chapter 71.05 RCW, the notice of claim filed with the County, by a prior attorney on behalf of the estate, does refer to the statute. The complaint also alleges Stevens County was liable because Mr. Jones failed to detain Mr. Erickson. As to that claim, Stevens County is immune under RCW 71.05.120.

¶18 The estate also asserts Mr. Jones, and by extension Stevens County, was grossly negligent. Dr. Ronald Klein, a clinical psychologist, reviewed the records and opined Mr. Jones should have contacted Mr. Scott directly after the assessment of Mr. Erickson. Dr. Klein also stated Mr. Jones's assessment was incomplete and unreasonable. But this conduct does not rise to the level of gross negligence. As to the estate's claim that the County was negligent for failing to detain Mr. Erickson, the provisions of RCW 71.05.120 apply and bar the claim.

¶19 The estate further claims the County was negligent in its handling of Mr. Erickson's assessment. Specifically, the estate suggests Mr. Jones obtained information during his assessment of Mr. Erickson that·suggested he was violent and thus triggered a duty to warn. In an action for negligence, the plaintiff must prove (1) the existence of a duty, (2) a breach of the duty, (3) an injury to the plaintiff, and (4) proximate cause. *Estate of Jones v. State*, 107 Wn. App. 510, 517, 15 P.3d 180 (2000), *review denied*, 145 Wn.2d 1025 (2002).

¶20 There is no general duty to protect others from the criminal acts of a third party. *Kim v. Budget Rent A Car Sys., Inc.*, 143 Wn.2d 190, 196, 15 P.3d 1283 (2001). An exception to this rule exists, however, if there is a special relationship between the defendant and the victim or the defendant and the criminal. *Id.*; *see also Petersen v. State*,

100 Wn.2d 421, 426, 671 P.2d 230 (1983). Such a duty is imposed only if there is a definite, established, and continuing relationship between the defendant and the third party criminal actor. *Jones*, 107 Wn. App. at 518.

■ ¶21 Mr. Jones saw Mr. Erickson only one time. He performed an initial assessment to determine if Mr. Erickson would benefit from further counseling. This sole contact is not a definite, established, and continuing relationship that would trigger a legal duty. Summary judgment dismissal of the claims against the County was proper.

■ ¶22 The court also granted summary judgment dismissal of the estate's claims against Mr. Scott and the State. The relationship between a corrections officer and an offender can create a duty on the part of the corrections officer. *Taggart*, 118 Wn.2d at 223. In order to create this duty, there must be a "take charge" relationship between the officer and the offender. *Couch v. Dep't of Corr.*, 113 Wn. App. 556, 565, 54 P.3d 197 (2002), *review denied*, 149 Wn.2d 1012 (2003). To determine if the proper relationship exists, courts look to its nature. *Id.* The two most important considerations are the court order placing the corrections officer in charge and the statutes giving the officer the power to act. *Id.* A corrections officer cannot take charge of an offender without a court order, and he can enforce the order only according to its terms and controlling statutes. *Id.*

¶23 There is no dispute Mr. Scott had a court order placing him in charge of Mr. Erickson pursuant to the community supervision portion of his sentence. Although this at least suggests the existence of a duty, the State claims the order contained several improper conditions that, if eliminated, left Mr. Scott with no power to act. The court order imposed the following conditions on Mr. Erickson: (1) not commit crimes; (2) not possess firearms; (3) not contact the victims; and (4) any other conditions the corrections officer might impose.

¶24 RCW 9.94A.030(9) defines "community supervision" as a period of time during which the offender is subject to

crime-related prohibitions. A "crime-related prohibition" is something that relates directly to the crime. RCW 9.94A.030(12). Offenders on community supervision are required to report to their corrections officer, report any address or employment changes, and stay within a geographic boundary. RCW 9.94A.720(1)(b) (formerly RCW 9.94A.120(14) (1998)). This type of offender is also prohibited from possessing firearms. RCW 9.94A.720(2) (formerly RCW 9.94A.120(15) (1998)). The court also may order an offender to undergo a mental evaluation if the offender is mentally ill and the condition influenced the offense. RCW 9.94A.505(9) (formerly RCW 9.94A.120(2) (1998)).

¶25 The condition in the court order prohibiting Mr. Erickson from committing new crimes was improper because he was a repeat offender.[2] *See State v. Barclay,* 51 Wn. App. 404, 407-08, 753 P.2d 1015 (a first time offender can be ordered to not commit new offenses, but the same provision is not permissible for a repeat offender), *review denied,* 111 Wn.2d 1010 (1988). Mr. Scott required Mr. Erickson to submit to drug testing based upon this condition, which was outside his authority.

¶26 Mr. Scott did not have the authority to prohibit or supervise Mr. Erickson's conduct unrelated to his underlying conviction. If a condition is not authorized, the State does not have the authority to sanction the violation. *State v. Raines,* 83 Wn. App. 312, 316, 922 P.2d 100 (1996). If the State is not authorized to intervene, it cannot be found to have the duty to do so. *Couch,* 113 Wn. App. at 569.

¶27 The only lawful conditions imposed were the prohibitions regarding possessing firearms and contacting his victims. These being the only conditions for which the State had the authority to intervene, any duty was thus limited to them. Because Mr. Erickson did not violate them, there was no basis for the State to detain him as the estate suggests.

---

[2] In 1999, the legislature amended the Sentencing Reform Act of 1981, chapter 9.94A RCW, to permit this condition to be imposed on repeat offenders. The amendment became effective after July 1, 2000. *State v. Jones,* 118 Wn. App. 199, 205, 76 P.3d 258 (2003). Thus, it did not apply to Mr. Erickson.

There was no duty triggered by the conditions of Mr. Erickson's release.

¶28 Corrections officers also have a duty to protect third parties from reasonably foreseeable dangers that exist because of an offender's dangerous propensities. *Taggart*, 118 Wn.2d at 224; *see also Hertog v. City of Seattle*, 138 Wn.2d 265, 281, 979 P.2d 400 (1999); *Bishop v. Miche*, 137 Wn.2d 518, 531, 973 P.2d 465 (1999). At the time of this crime, Mr. Erickson had been convicted of property crimes. He had not been violent toward any person. Nothing in the record indicates Mr. Scott, or by extension the State, had any reason to believe Mr. Erickson would commit murder. In *Taggart*, the offenders had a history of violent attacks against women while drinking. *Taggart*, 118 Wn.2d at 224-25. The corrections officer knew of parole violations and that one offender was reportedly drinking. This offender ended up committing a rape. *Id.* In *Hertog*, the offender, who had a prior conviction for sexual crimes, committed rape. *Hertog*, 138 Wn.2d at 271-73. In *Bishop*, a driver who had a history of drunk driving violations drove drunk and caused an accident killing someone. *Bishop*, 137 Wn.2d at 522-23.

¶29 In these cases, the crimes bore some relation to the prior criminal activity of each offender. That is not the case here. Mr. Scott had no indication of any dangerous propensities for him to reasonably foresee that Mr. Erickson might commit murder.

¶30 In contrast, a recent Division Two case determined "[t]he law does not require a factual nexus between the crime for which the offender was sentenced and the harm he caused the plaintiff before sending the question to the jury." *Joyce v. Dep't of Corr.*, 116 Wn. App. 569, 588, 75 P.3d 548 (2003), *review granted*, 150 Wn.2d 1032 (2004). Arguments were heard by our Supreme Court in this case in May 2004, but no decision has yet been rendered.

¶31 The facts of *Joyce* are, however, distinguishable in any event. In *Joyce*, the offender was on community supervision for a third degree assault. *Id.* at 575. The offender

failed to meet with his community corrections officer on several occasions and was unable to begin his community service hours as scheduled. He also was not home on several occasions when his corrections officer dropped by. *Id.* at 576-78. The offender had a two-year relationship with the State while on community supervision and had several incidents of failure to comply with his corrections officer before he stole a car and had the accident that resulted in the victim's death. *Id.* at 575-85.

¶32 Unlike the offender in *Joyce*, Mr. Erickson did not have a long history with his corrections officer. He also did not have a history of violating the conditions imposed. In *Joyce*, reasonable minds could differ on the issue of foreseeability. Reasonable minds could not differ here. The State had no duty to protect third parties under these circumstances. Without the State owing any duty, the court properly granted summary judgment dismissal of the estate's claims.

¶33 Contending it was entitled to summary judgment dismissal of Mr. Davis's parents' claims under RCW 4.24.010, the State cross-appeals. RCW 4.24.010 provides: "A mother or father, or both, who has regularly contributed to the support of his or her minor child . . . may maintain or join as a party an action as plaintiff for the injury or death of the child." This statute is intended to provide a civil cause of action for wrongful injury or death of a minor child to a parent who has had significant involvement in the child's life, including, but not limited to, emotional, psychological, or financial support. *Blumenshein v. Voelker*, 124 Wn. App. 129, 134, 100 P.3d 344 (2004).

¶34 The court found questions of fact existed with respect to whether Mr. Davis's parents regularly contributed to their son's support. But there is no evidence whatsoever on the issue of support by Mr. Davis's mother or the relationship she had with her son. Mr. Davis's father provided an affidavit indicating he did not know what legal support meant, but he had done what he could for his son. Even viewed in a light most favorable to the estate, his

affidavit does not establish a significant relationship. The court should have granted summary judgment dismissal of the parents' claims as well.

¶35 We affirm summary judgment dismissal of the estate's claims against Stevens County and the State. We reverse the denial of summary judgment with respect to the parents' claims and direct their dismissal.

SWEENEY and BROWN, JJ., concur.