# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JANET G. HUSTED as Personal )
Representative of the ESTATE OF )    No. 71662-0-I
KURT HUSTED; WILBERT R. PINA, )
an individual; and JOEL FLORES, )
guardian ad litem for minor )
EMMETT PINA; )    ORDER GRANTING MOTION TO
)    AMEND AND MOTION TO PUBLISH
Appellants, )    AND WITHDRAWING AND
)    REPLACING OPINION
v. )
)
STATE OF WASHINGTON, )
)
Respondent. )

A motion to amend and a motion to publish was filed by respondent, State of

Washington asking the court to amend the opinion filed in this case on March 16, 2015.

Appellants filed an opposition to the respondent's motion to publish. The panel has

considered the motions and determined they should be granted.

Now, therefore, it is hereby

ORDERED that the motion to amend and the motion to publish are granted and

the opinion of this court filed March 16, 2015 is withdrawn and replaced with a revised

opinion.

SO ORDERED

Dated this 11th day of____may_____, 2015.

FOR THE COURT:

_Spearman, C.J._

_Schindler, J._

_Leach, J._

# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

JANET G. HUSTED as Personal )
Representative of the ESTATE OF )    No. 71662-0-I
KURT HUSTED; WILBERT R. PINA, )
an individual; and JOEL FLORES, )    DIVISION ONE
guardian ad litem for minor )
EMMETT PINA; )
)
               Appellants, )    PUBLISHED OPINION
)
    v. )
)
STATE OF WASHINGTON, )
)
           Respondent. )    FILED: May 11, 2015

SPEARMAN, C.J. — This appeal arises from entry of summary judgment in an action for negligent supervision of an offender, Calvin Finley, by the Department of Corrections (DOC). Appellants contend the trial court erred in concluding that, as a matter of law, DOC had no duty to control the offender once he absconded from supervision and a warrant was issued for his arrest. Finding no error, we affirm.[1]

## FACTS

On September 1, 2006, Calvin Finley was convicted of a violation of a domestic violence court order in Pierce County and sentenced to 15 months confinement and 9 to 18 months of community custody. After his release from the

---

[1] In light of our disposition of the case, we do not address the issues of qualified immunity and proximate cause.

Pierce County Jail on March 1, 2007, he reported to DOC for supervision, as required by his judgment and sentence. Over the course of the next year and a half, Finley repeatedly violated the terms of his supervision. He was found guilty of several violations, sanctioned repeatedly, and eventually remanded to the Kitsap County Jail.

While Finley was in jail, DOC filed another violation report, charging Finley with eleven separate violations. DOC requested the hearing officer to impose 240 days confinement as a sanction. A hearing was held on October 15, 2008, and Finley was found guilty of seven violations and sanctioned with 200 days confinement. Finley was ordered to report for supervision within one business day of his release from jail.

Finley was released on Saturday, February 14, 2009. According to the terms of his supervision, he was to report to DOC on the next business day, Tuesday, February 17, 2009. He failed to do so. A DOC officer immediately requested a Secretary's Warrant for his arrest and attempted to ascertain his whereabouts. However, the officer was unable to locate Finley, who remained a fugitive until June 2, 2009.

On June 2, 2009, Finley robbed an armored car at the Lakewood, Washington Walmart store. During the course of the robbery, Finley shot and killed Kurt Husted and injured Wilbert Pina. He was subsequently apprehended and found guilty of various crimes and community custody violations. He was sanctioned with 120 days confinement for the community custody violations. And, on March 19, 2010, Finley plead guilty to the following crimes: aggravated first degree murder; assault in the first degree; robbery in the first degree; criminal

solicitation to commit robbery in the first degree; and unlawful possession of a firearm in the first degree.

On May 16, 2012, appellants Janet G. Husted and Wilbert Pina initiated this action against the State of Washington in Pierce County Superior Court, alleging that DOC was negligent in its supervision of Finley and, as a result, the State is liable for the injuries he inflicted during the June 2, 2009 robbery committed by Finley. The State moved for summary judgment that it had no duty to control Finley at the time he caused the death of Husted and injuries to Pina. The trial court agreed and entered judgment for the State. Husted and Pina appeal.

## DISCUSSION

Because this appeal arises from the trial court's entry of summary judgment, we review de novo, making the same inquiry as the trial court, i.e., summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Hertog, ex rel. S.A.H. v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999) (citing Taggart v. State, 118 Wn.2d 195, 199, 822 P.2d 243 (1992); CR 56(c)). We construe all facts and reasonable inferences from the facts in the light most favorable to the nonmoving party. Id. (citing Taggart, 118 Wn.2d at 199). Questions of law are reviewed de novo. Sherman v. State, 128 Wn.2d 164, 183, 905 P.2d 355 (1995).

Summary judgment is subject to a burden-shifting scheme. Ranger Ins. Co. v. Pierce Cnty., 164 Wn.2d 545, 552, 192 P.3d 886 (2008).The initial burden to show the nonexistence of a genuine issue of material fact is on the moving party. Id.; see also Vallandigham v. Clover Park School Dist. No. 400, 154 Wn.2d 16, 26, 109 P.3d

3

805 (2005). For example, a defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case. Sligar v. Odell, 156 Wn. App. 720, 725, 233 P.3d 914 (2010) (citing Young v. Key Pharm., Inc., 112 Wn.2d 216, 225 n. 1, 770 P.2d 182 (1989). Once this initial showing is made, the inquiry shifts to the plaintiff because the plaintiff bears the burden of proof at trial. Id. at 725.

In order to make a prima facie case for negligence, Appellants, as plaintiffs, bore the burden of first establishing the existence of a duty owed them by the State. Hertog, 138 Wn.2d at 275 (citing Degel v. Majestic Mobile Manor, Inc., 129 Wn.2d 43, 48, 914 P.2d 728 (1996)). The State moved for summary judgment, arguing that Appellants failed to do so.

The parties agree that under Taggart and its progeny, DOC officers and the State have a duty to control the behavior of persons committed to DOC for supervision. The dispute hinges on whether those cases also dictate that the State's duty extends to an offender who absconds supervision, has no contact with his community corrections officer, and for whom a warrant has been issued for his or her arrest. The State contends that under these circumstances the duty is suspended until the offender is apprehended. Husted and Pina argue the duty continues at all times until the State's duty to supervise the offender is terminated or modified in some material way. We conclude that under the facts of this case, the State had no such duty and affirm.

In Taggart, our supreme court recognized an exception to the common law rule that a person has no duty to prevent another person from causing physical injury to

4

another. Taggart, 118 Wn.2d at 219-20. The exception to the common law rule is set forth in Restatement (Second) of Torts, §§ 315 and 319. Section 315(a) states in relevant part:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>     (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third persons conduct. . . .

The court specifically adopted one class of the "special relation" cases described in § 319 as most relevant to the relationship between parole officer and parolee.[2] Id. at 219. Section 319 provides:

> One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm.

The Taggart court held that to "take charge" of a third person as that term is used in § 319 means to have a "'definite, established and continuing relationship between the defendant and the third party.'" Id. (quoting Honcoop v. State, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988)). The court determined that such a relationship existed between parole officers and parolees based on RCW 72.04A.080, which states that parolees "'shall be subject to the supervision of the department of corrections, and the probation and parole officer of the department

---

[2] The terms "parole officer" and "parolee" are generally associated with cases arising before enactment of the Sentencing Reform Act (SRA) or with opinions from courts in other jurisdictions. Under the SRA, the term "offender" is generally used to refer to individuals under the supervision of DOC while on parole, probation, community supervision, or community custody, while the term "community corrections officer" (CCO) refers to DOC officers who supervise sentenced offenders and monitor sentence conditions. See former RCW 9.94A.720(1)(a) and (b) (2009). For purposes of this opinion, the terms "parole officer" and "parolee" are interchangeable, respectively, with the terms "community corrections officer" and "offender."

5

shall be charged with ... giv[ing] guidance and supervision to such parolees within the conditions of a parolee's release from custody.'"[3] Id. (quoting RCW 72.04A.080). Under this statute, the State could, among other things, regulate the parolee's movements within the state, require the parolees to report, impose special conditions such as refraining from alcohol or undergoing drug rehabilitation or psychiatric treatment, and order parolees not to possess firearms. Further, under the statute, parole officers are or should be aware of their parolee's criminal histories and monitor or should monitor, their parolee's progress. The Taggart court concluded that "[b]ecause of these factors ... parole officers have 'taken charge' of the parolees they supervise for purposes of § 319." Taggart, 118 Wn.2d at 220. Thus, "the 'take charge' aspect of special relationship liability became a term of art incorporating the kinds of attributes described in Taggart." Sheikh v. Choe, 156 Wn.2d 441, 449, 128 P.3d 574 (2006).

---

[3] RCW 72.04A.080, which Taggart found created the take charge relationship between the parole officer and the parolee, is inapplicable to felonies committed on or after July 1, 1984, the effective date of the SRA. The authority of DOC officers to supervise and monitor felony offenders was recodified under RCW 9.94A.700 et seq., effective date July 1, 1984. See, Estate of Davis v. State, Dept. of Corrections, 127 Wn. App. 833, 842-43, 113 P.3d 487 (2005). Laws of 2008, ch. 9.94A, § 720 RCW (repealed August 1, 2009) provides in relevant part:

> (1)(a) Except as provided in RCW 9.94A.501, all offenders sentenced to terms involving community supervision, community restitution, community placement, or community custody shall be under the supervision of the department and shall follow explicitly the instructions and conditions of the department. The department may require an offender to perform affirmative acts it deems appropriate to monitor compliance with the conditions of the sentence imposed. The department may only supervise the offender's compliance with payment of legal financial obligations during any period in which the department is authorized to supervise the offender in the community under RCW 9.94A.501.

> (b) The instructions shall include, at a minimum, reporting as directed to a community corrections officer, remaining within prescribed geographical boundaries, notifying the community corrections officer of any change in the offender's address or employment, and paying the supervision fee assessment.

In this case, it is undisputed that DOC "took charge" of Finley within the meaning of § 319 when he reported for supervision in 2007, as required by his 2006 judgment and sentence. RCW 9.94A.700 et seq. empowered DOC to control Finley and gave rise to the definite, established, and continuing relationship necessary to create a duty to control under § 319. But at the time of the robbery that lead to the death of Husted and the injuries to Pina, Finley had absconded from supervision and a warrant had been issued for his arrest. The State contends that under these circumstances, its duty to control Finley was suspended.

The State argues that Taggart recognizes that the premise underlying of § 319 is the continuing relationship between the community corrections officer and the offender. Because of the continuing relationship, the community corrections officer has the ability to monitor and supervise the offender. He or she can also control and modify the offender's conduct by coercive action against the offender as authorized by the legislature. But when the offender absconds from supervision and a warrant is issued for his or her arrest, the State argues that the requisite continuing relationship is terminated and the ability to monitor and control the offender's behavior no longer exists. Accordingly, the State contends that during such times, because the rationale for imposing the duty under § 319 and Taggart has disappeared, so to should the duty itself, until the offender is apprehended and the continuing relationship is re-established.

Husted and Pina contend the State's duty to third persons under Taggart and § 319 is not diminished because an offender has absconded and is on warrant status. They point out that the Taggart court expressly rejected the State's

argument in that case that a take charge relationship requires "nothing less than a

full custodial relationship. . . ." Taggart, 118 Wn.2d at 222. They also point out that

the court distinguished and rejected the principal cases upon which the State relied,

Fox v. Custis, 236 Va. 69, 372 S.E.2d 373 (1988) and Lamb v. Hopkins, 303 Md.

236, 492 A.2d 1297 (1985). In Fox, the victims of a parolee's crimes sued the state

parole officers responsible for the parolee's supervision. The Taggart court

observed:

> The case was analyzed under § 319, and the court held that
> the parole officers did not 'take charge' of the parolee because
> the statute empowering the officers to supervise parolees 'does
> not contemplate continuing hourly or daily dominance and
> dominion by a parole officer over the activities of a parolee.'

Taggart, 118 Wn. 2d at 222 (quoting Fox, 236 Va. at 75). Similarly, the court noted

that in Lamb:

> the Maryland court expressly adopted § 319, but held that
> probation officers do not 'take charge' of probationers such as to
> give rise to a duty to exercise due care in controlling the
> probationers because of the lack of a custodial relationship and
> the relative freedom the probationers have in conducting their day-
> to-day affairs.

Taggart, 118 Wn. 2d at 222. Taggart explicitly rejected these views. The court

observed that "the Washington statute empowering parole officers to supervise

parolees contemplates neither a custodial relationship, such as the Maryland court

required in Lamb, nor continuous supervision, such as the Virginia court demanded

in Fox." Id. at 223. Accordingly, the court held that "a parole officer takes charge of

the parolee he or she supervises despite the lack of a custodial or continuous

relationship." Id. at 223. Thus, Husted and Pina contend that because neither

custody nor a continuous relationship are necessary components of the duty under

8

§ 319, the State's take charge relationship with Finley continued even though he had absconded from supervision and a warrant had been issued for his arrest.

The flaw in the argument made by Husted and Pina is that it conflates two distinct concepts discussed in Taggart. "[C]ustody or [a] continuous relationship" which is not required to establish a take charge relationship and a "definite, established and continuing relationship" which is. Taggart, 118 Wn.2d at 219-23.

In this case, the basis of the take charge relationship, and the duty created thereby, is the community corrections officer's statutory authority to supervise the offender under RCW 9.94A.720. Pursuant to that statute, a community corrections officer must monitor the offender's compliance with the conditions of supervision and his or her progress while on supervision. And when necessary, the community corrections officer can control the offender's behavior by threat of incarceration, limiting movements to prescribed boundaries, increasing reporting requirements and the like. RCW 9.94A.720(1). Taggart tells us that the exercise of this authority depends on neither custody nor a condition of "'continuing hourly or daily dominance and dominion.'" Taggart, at 224, (quoting Fox, 236 Va. at 75). Thus, even though an offender may have only weekly or monthly contact with a community corrections officer, that is sufficient to establish and maintain a take charge relationship. But Taggart also tells us that a take charge relationship entails ongoing contact between the community corrections officer and the offender because the relationship must be a "direct, established and continuing" one. Id. at 219. It is the continuing nature of the relationship that allows the community corrections officer to exercise control. An offender who has absconded and for

9

whom a warrant has been issued, no longer has a continuing relationship with the community corrections officer. When this occurs the offender is not subject to the community corrections officer's control because he or she cannot be monitored, given direction or sanctioned.

Husted and Pina cite Joyce v. Dep't of Corrections, 155 Wn.2d 306, 119 P.3d 825 (2005) in support of their argument that the State still had a take charge relationship with Finley. But the case is distinguishable. In Joyce, the parolee, Stewart, was on DOC supervision as a result of convictions for assault, possession of stolen property and driving offenses. Although he repeatedly failed to report to his community corrections officer as directed, the evidence showed that he had continuing and ongoing contact with her by phone, through family members and unscheduled visits. As a result, the community corrections officer filed two "notices of violation" with the court, but did not request a warrant for Stewart's arrest.[4] Subsequently, Stewart drove a stolen car at a high rate of speed into a small pickup truck driven by Paula Joyce, killing her. The supreme court rejected the State's argument in that case that it owed no duty to Joyce. But unlike here, in Joyce there was no issue that despite failing to report as directed, Stewart maintained contact with his community corrections officer and no warrant was issued for his arrest. Thus, the requisite continuing relationship between the community corrections officer and offender was intact and the State's take charge duty remained.

---

[4] The facts of the case are set forth in great chronological detail in Joyce v. Dep't of Corrections, 116 Wn. App. 569, 575-85, 75 P.3d 548 (2003).

In this case, however, it is undisputed that only one brief telephone contact occurred between Finley and DOC from the date of his release from custody on February 14, 2009 and the date of his arrest on June 3, 2009. It is also undisputed that a warrant for his arrest was issued on February 18, 2009, the day after he failed to report as directed. Here, unlike in Joyce, there was no continuing relationship between Finley and his community corrections officer and since the basis for the take charge did not exist, the State had no duty to control him.

Husted and Pina rely on In re Pers. Restraint of Dalluge, 162 Wn.2d 814, 177 P.3d 675 (2008), to argue that the take charge relationship continues even after an offender is on warrant status. Dalluge was serving a year of community custody when he was arrested and taken to jail where he was involved in an altercation. DOC determined that the altercation violated the terms of his community custody and, after a hearing, sanctioned him. Dalluge argued that since his term of community custody was tolled while he was in confinement pursuant to former RCW 9.94A.625 (2008), recodified as RCW 9.94A.171, the department did not have the authority to discipline him for the alleged violation. The supreme court disagreed, holding that although the statute tolled Dalluge's term of community custody while he was incarcerated, that did not diminish DOC's authority to enforce the terms of his supervision.

Husted and Pina point out that under RCW 9.94A.171 the period of community supervision is similarly tolled for an offender who absconds from supervision. They contend that here, as in Dalluge, absconding does not diminish DOC's power and duty to supervise the offenders committed to it. Thus, they argue

11

that even though Finley's supervision was tolled by issuance of the warrant, DOC's authority to supervise him continued and the take charge relationship remained intact. We disagree that Dalluge is controlling.

First, Dalluge does not discuss to what extent, if any, RCW 9.94A.171 affects DOC's take charge relationship with an offender who absconds from supervision. It held only that when a person subject to DOC supervision is in custody, the terms of supervision remain in effect and are enforceable even though the term of community custody is tolled for the duration of the offender's confinement. Second, even if Dalluge were controlling, it is entirely consistent with the idea that the take charge relationship is linked to an ongoing, continuing relationship between the community corrections officer and the offender. That relationship exists when the offender is in custody and subject to control by his or her community corrections officer.

We conclude that where an offender absconds from supervision and a warrant is issued for his or her arrest, the requisite continuing relationship no longer exists and the duties associated with the take charge relationship are terminated unless and until the person is apprehended. Accordingly, we hold that the State had no duty to control Finley's behavior at the time he committed the acts giving rise to the claims in this case because Finley had absconded supervision, had only minimal contact with DOC and was on warrant status at that time. The trial court did not err when it granted the State's motion for summary judgment dismissal.

Affirmed.

Spearman, C.J.

WE CONCUR:

Leach, J.

Schindler, J.