# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MICHAEL KONICKE, individually and as Personal Representative of the Estate of Victoria Konicke, deceased,<br><br>Appellant,<br><br>v.<br><br>EVERGREEN EMERGENCY SERVICES, P.S., a Washington Professional Service Corporation; KING COUNTY PUBLIC HOSPITAL DISTRICT NO. 2, d/b/a EVERGREENHEALTH MEDICAL CENTER, JANE and JOHN DOES 1-10 and the marital communities thereof, and ABC CORPORATIONS 1-10,<br><br>Respondents. | DIVISION ONE<br><br>No. 80463-4-I<br><br>PUBLISHED OPINION |

DWYER, J. — Michael Konicke appeals from a dismissal of his complaint alleging gross negligence against Evergreen Emergency Services and King County Public Hospital District No. 2. and the denial of his subsequent motion to reconsider. Michael contends that because his son, Zachary, was treated at the respondents' emergency room while experiencing a mental health crisis, a special relationship was formed, and respondents can be held liable for gross negligence resulting in Zachary's subsequent actions—shortly after he was released, Zachary killed Michael's wife Victoria, attacked Michael, and set fire to

the family home. Michael also avers that, even if no such special relationship was formed, the involuntary treatment act, chapter 71.05 RCW, creates an independent cause of action entitling Michael to relief. Because neither contention is meritorious, we affirm.

I

After ending his relationship with his wife in California in January 2015, Zachary Konicke returned to Washington, where his parents, Michael and Victoria Konicke, and his brother, Alex Konicke, resided.[1] Over the course of 2015, Zachary's[2] behavior became increasingly odd. At one point, Zachary physically attacked Victoria.

In January 2016, Zachary and Alex were living together. On January 12, Zachary "shaved off all his body hair and doused himself in gasoline with the intention of lighting himself on fire to prove that it would not hurt or injure him, and made paranoid statements about being watched and chased, and about the devil, demons and other spirits." Early the next morning, Alex found Zachary wrapped in a blanket inside of a storage closet in their house, "acti[ng] and speak[ing] in a bizarre and frightening manner." Alex called the police. Zachary was placed in an ambulance and taken to King County Public Hospital District No. 2's emergency room.[3]

---

[1] The substantive facts are as set forth in Michael's pleadings. Direct quotations are derived from Michael's amended complaint.

[2] Members of the Konicke family are referred to by first name for clarity. No disrespect is intended.

[3] King County Public Hospital District No. 2 does business as EvergreenHealth Medical Center and is referred to as such in Michael's pleadings.

2

After Alex explained to emergency room staff the events that had caused him to call the police, Zachary was evaluated. Zachary was released within a few hours. A designated mental health professional was not summoned to evaluate Zachary for involuntary treatment.

Alex felt that he "could not be responsible" for Zachary and took him to their parents' house. The next day, Zachary killed Victoria, attacked Michael, and set the family home on fire.

Michael filed separate complaints against Evergreen Emergency Services and King County Public Hospital District No. 2, on behalf of himself and his wife's estate, which were later consolidated into a single action. In his initial complaint, Michael asserted three causes of action: (1) negligent supervision, (2) medical negligence, and (3) gross negligence in violation of RCW 71.34.410.[4] In asserting negligent supervision, Michael contended that respondents had a special relationship with Zachary because they had "taken charge" of Zachary.

Evergreen Emergency Services and King County Public Hospital District No. 2 each filed a CR 12(b)(6) motion to dismiss. In response, Michael abandoned his original claims and filed an amended complaint asserting gross negligence in violation of chapter 71.05 RCW as the sole cause of action.

The trial court granted respondents' motion to dismiss. The trial court found that RCW 71.05.120[5] does not create a cause of action and that there was no

_____

[4] Chapter 71.34 RCW applies to mental health services for minors. It is undisputed that Zachary was not a minor during the relevant time period. Michael later indicated that the citation to this statute was erroneous.

[5] RCW 71.05.120 provides:

(1) No officer of a public or private agency, nor the superintendent, professional person in charge, his or her professional designee, or attending staff

3

special relationship between Zachary and respondents such that they owed a duty of care to third parties.

Michael moved for reconsideration. The motion was denied. Michael appeals both the dismissal and the denial of his motion to reconsider.

II

A

We review an order granting a motion to dismiss under CR 12(b)(6) de novo. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014). A dismissal for failing to state a claim upon which relief may be granted is appropriate when the plaintiff cannot prove "'any set of facts which would justify recovery.'" Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007) (quoting Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 330, 962 P.2d 104 (1998)). All facts alleged in the plaintiff's complaint are

---

of any such agency, nor any public official performing functions necessary to the administration of this chapter, nor peace officer responsible for detaining a person pursuant to this chapter, nor any designated crisis responder, nor the state, a unit of local government, an evaluation and treatment facility, a secure withdrawal management and stabilization facility, or an approved substance use disorder treatment program shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence.

(2) Peace officers and their employing agencies are not liable for the referral of a person, or the failure to refer a person, to a behavioral health agency pursuant to a policy adopted pursuant to RCW 71.05.457 if such action or inaction is taken in good faith and without gross negligence.

(3) This section does not relieve a person from giving the required notices under RCW 71.05.330(2) or 71.05.340(1)(b), or the duty to warn or to take reasonable precautions to provide protection from violent behavior where the patient has communicated an actual threat of physical violence against a reasonably identifiable victim or victims. The duty to warn or to take reasonable precautions to provide protection from violent behavior is discharged if reasonable efforts are made to communicate the threat to the victim or victims and to law enforcement personnel.

4

presumed to be true. Chukri v. Stalfort, 200 Wn. App. 870, 874, 403 P.3d 929 (2017). The plaintiff is entitled to the benefit of any hypothetical set of facts consistent with the complaint. Hoffer v. State, 110 Wn.2d 415, 420, 755 P.2d 781 (1988).

B

Michael first contends that the trial court erred by dismissing his gross negligence claim because, he avers, respondents had a special relationship with Zachary, triggering liability for foreseeable harm that Zachary caused to Michael and Victoria. We disagree. Because respondents' relationship with Zachary was not "definite, established, and continuing," it was not a special relationship as described in the Restatement (Second) of Torts § 315 (Am. Law Inst. 1965), or in Washington case law. Volk v. DeMeerleer, 187 Wn.2d 241, 256, 386 P.3d 254 (2016) (citing Honcoop v. State, 111 Wn.2d 182, 193, 759 P.2d 1188 (1988)).

Initially, we note that Washington does not recognize a cause of action for medical malpractice in the absence of a physician/patient relationship. This is because medical malpractice jurisprudence imposes a duty on a medical professional to act consistently with the standards of the medical profession, and those duties are owed to the patient. Paetsch v. Spokane Dermatology Clinic, PS, 182 Wn.2d 842, 850 n.6, 348 P.3d 389 (2015).

However, Restatement § 315 may impose a different duty—owed by a medical professional to a nonpatient victim—based on the relationship between the professional and the patient. Volk, 187 Wn.2d at 255. A claim arising from

this duty is appropriately characterized as a medical negligence claim. Volk, 187 Wn.2d at 254.

Generally, a person is not obligated to prevent one person from causing harm to another. Hertog v. City of Seattle, 138 Wn.2d 265, 276, 979 P.2d 400 (1999). However, an exception exists when "a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct." RESTATEMENT § 315.[6]

"[A] special relationship exists under § 315, triggering the imposition of a duty to protect against foreseeable dangers on a showing that a definite, established, and continuing relationship exists between the defendant and the third party." Volk, 187 Wn.2d at 256 (citing Honcoop, 111 Wn.2d at 193). Our Supreme Court has found that such a relationship may exist between psychiatrists and their patients, in both inpatient and outpatient settings. Volk, 187 Wn.2d at 262-63; Petersen v. State, 100 Wn.2d 421, 428, 671 P.2d 230 (1983).

Here, Michael concedes that Zachary did not have a "definite, established, and continuing relationship" with respondents as a result of a single visit to the emergency room. We agree. Accordingly, Evergreen Emergency Services and King County Public Hospital District No. 2 did not have a duty to protect Michael and Victoria from Zachary.

---

[6] The Restatement, in §§ 316-319, also describes other relationships that can create duties to third parties. These are, respectively, the relationship between a parent and a child, the relationship between a master and a servant, the relationship between a landowner and a licensee, and the relationship between a person having dangerous propensities and one who has "take[n] charge." None are applicable to this case.

6

Michael nonetheless avers that the policy considerations our Supreme Court discussed in Volk support extending liability. These considerations were relevant in determining the scope of a medical professional's duty when the existence of a special relationship between the medical professional and the patient was undisputed. Volk, 187 Wn. 2d at 246. Here, no special relationship was formed and, accordingly, no duty was owed to Michael. See Estate of Davis v. Dep't of Corr., 127 Wn. App 833, 841-42, 113 P.3d 487 (2005) (initial assessment with licensed mental health counselor did not create special relationship between counselor and patient, and, therefore, counselor had no duty to protect others from patient). Similarly, the foreseeability of the harm to a third party determines the scope of a medical professional's obligations to that third party—even when a special relationship has been formed, the medical professional has an obligation to protect third parties only from foreseeable dangers. See Volk, 187 Wn. 2d at 256 ("[A] special relationship exists under § 315, triggering the imposition of a duty to protect against foreseeable dangers on a showing that a definite, established, and continuing relationship exists between the defendant and the third party.")[7]

Michael also contends that Evergreen Emergency Services and King County Public Hospital District No. 2 had a special relationship with Zachary because RCW 71.05.050(3) gave respondents control over Zachary. However, the amount of control and the nature of the control respondents had over

---

[7] In asserting otherwise, Michael cites to Kaiser v. Suburban Transp. Sys., 65 Wn.2d 461, 398 P.2d 14, 401 P.2d 350 (1965). But Kaiser does not address whether there is a special relationship between a physician and a patient, presumably because Washington courts, at the time of the opinion, had not yet adopted Restatement § 315 as expressing the law of the state.

7

Zachary is not determinative of whether they had a duty to act for the benefit of Michael and Victoria. See Volk, 187 Wn. 2d at 261-262 (distinguishing between Restatement § 319 "take charge" duty and § 315 "special relationship" duty and concluding amount and nature of control was not determinative of §315 duty.)

Because Evergreen Emergency Services and King County Public Hospital District No. 2 had no duty to protect Michael and Victoria, the trial court appropriately dismissed Michael's medical negligence claim.

III

Michael next contends that, regardless of whether respondents are liable for common law medical negligence, RCW 71.05.050 creates an independent duty on healthcare providers to protect third parties from mentally ill patients.[8]

"The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'" State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013) (quoting State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)). To determine whether the legislature intended that a statute include an implied cause of action, we employ a three-factor test articulated in Bennett v. Hardy, 113 Wn.2d 912, 784 P.2d 1258 (1990): (1) whether the plaintiff is within the class for whose benefit the statute was enacted, (2) whether legislative intent, explicitly or implicitly, supports creating or denying a remedy, and (3) whether implying a

---

[8] In the trial court, Michael argued that the cause of action was implied by virtue of RCW 71.05.120. The trial court rejected this assertion. On appeal, Michael appears to focus his argument on RCW 71.05.050.

remedy is consistent with the underlying purpose of the legislation. Keodalah v. Allstate Ins. Co., 194 Wn.2d 339, 346, 449 P.3d 1040 (2019).

A

The first Bennett factor is not met if the statute benefits the general public rather than an identifiable class of people. Keodalah, 194 Wn.2d at 346; see also Cannon v. Univ. of Chi., 441 U.S. 677, 692 n.13, 99 S. Ct. 1946, 60 L. Ed. 2d 560 (1979) ("[T]he Court has been especially reluctant to imply causes of actions under statutes that create duties on the part of persons for the benefit of the public at large.").

In enacting chapter 71.05 RCW, the specific class that the legislature intended to protect is that of people suffering from serious behavioral health disorders. RCW 71.05.010(1).[9] Plainly, chapter 71.05 RCW was not enacted for the particular benefit of third parties injured by people suffering from serious behavioral health disorders but, rather, for the benefit of people with behavioral

---

[9] RCW 71.05.010 provides:
  (1) The provisions of this chapter apply to persons who are eighteen years of age or older and are intended by the legislature:
  (a) To protect the health and safety of persons suffering from behavioral health disorders and to protect public safety through use of the parens patriae and police powers of the state;
  (b) To prevent inappropriate, indefinite commitment of persons living with behavioral health disorders and to eliminate legal disabilities that arise from such commitment;
  (c) To provide prompt evaluation and timely and appropriate treatment of persons with serious behavioral health disorders;
  (d) To safeguard individual rights;
  (e) To provide continuity of care for persons with serious behavioral health disorders;
  (f) To encourage the full use of all existing agencies, professional personnel, and public funds to prevent duplication of services and unnecessary expenditures; and
  (g) To encourage, whenever appropriate, that services be provided within the community.

health disorders themselves.  Thus, the first <u>Bennett</u> factor does not support finding an implied cause of action against healthcare providers when third parties are injured by patients.

B

We next turn to the question of legislative intent.  Whether the legislative intent supports creating or denying a remedy is a question of statutory interpretation.  <u>Keodalah</u>, 194 Wn.2d at 347.  When a statute, read in context, is unambiguous, we give effect to its plain meaning.  <u>Perez-Crisantos v. State Farm Fire & Cas. Co.</u>, 187 Wn.2d 669, 676, 389 P.3d 476 (2017).

The relevant statutory provision is as follows:

> If a person is brought to the emergency room of a public or private agency or hospital for observation or treatment, the person refuses voluntary admission, and the professional staff of the public or private agency or hospital regard such person as presenting as a result of a behavioral health disorder an imminent likelihood of serious harm, or as presenting an imminent danger because of grave disability, they **may** detain such person for sufficient time to notify the designated crisis responder of such person's condition to enable the designated crisis responder to authorize such person being further held in custody or transported to an evaluation treatment center, secure withdrawal management and stabilization facility, or approved substance use disorder treatment program pursuant to the conditions in this chapter, but which time **shall** be no more than six hours from the time the professional staff notify the designated crisis responder of the need for evaluation, not counting time periods prior to medical clearance.

RCW 71.05.050(3) (emphasis added).

By its plain meaning, RCW 71.05.050(3) allows emergency healthcare providers to temporarily detain a person whom they believe meets the criteria to be committed involuntarily until the person can be seen by a crisis responder, provided that the detention lasts no more than six hours.  The statute does not,

10

however, require that emergency healthcare providers do so. "The word 'may' is ordinarily regarded as permissive, and it is presumed to do so when used in the same statutory provision as the word 'shall.'" In re Det. of Nelson, 2 Wn. App. 2d. 621, 629, 411 P.3d 412 (2018). Thus, RCW 71.05.050(3) does not impose a duty on healthcare workers to detain any particular patient. Because RCW 71.05.050(3) does not impose a duty to detain anyone, it cannot provide a corresponding right of action for not doing so. Furthermore, even if such a duty was imposed, there is no indication in the text that a remedy should be made available to third parties.

C

The third Bennett consideration is whether recognizing a cause of action would be consistent with the legislature's purpose in enacting RCW 71.05.050(3). We look "to the entire statutory scheme to determine whether the requested remedy is consistent." Rocha v. King County, 195 Wn.2d 412, 428, 460 P.3d 624 (2020). Again, the legislative intent of chapter 71.05 RCW is expressed in RCW 71.05.010:

> (1) The provisions of this chapter apply to persons who are eighteen years of age or older and are intended by the legislature:
> (a) To protect the health and safety of persons suffering from behavioral health disorders and to protect public safety through use of the parens patriae and police powers of the state;
> (b) To prevent inappropriate, indefinite commitment of persons living with behavioral health disorders and to eliminate legal disabilities that arise from such commitment;
> (c) To provide prompt evaluation and timely and appropriate treatment of persons with serious behavioral health disorders;
> (d) To safeguard individual rights;
> (e) To provide continuity of care for persons with serious behavioral health disorders;

11

(f) To encourage the full use of all existing agencies, professional personnel, and public funds to prevent duplication of services and unnecessary expenditures; and

(g) To encourage, whenever appropriate, that services be provided within the community.

Recognition of an implied right of action for those who are injured by people with behavioral health disorders who have been seen, but not detained, by emergency health care providers could, arguably, further the general policy goal of protecting public safety. However, such a broad application of liability runs counter to the statutory scheme, which specifically limits liability for the detention decisions made by emergency healthcare providers. See RCW 71.05.120. Had the legislature intended that the protection of public safety be accomplished by the creation of civil liability for detention decisions, it likely would not have immunized such decisions in the absence of bad faith or gross negligence.

Further, allowing a cause of action for a failure to detain a person who subsequently injures a third party is not warranted by a purpose as general as "protecting public safety." See Keodalah, 194 Wn.2d at 349 (general policy goal of "'preserving inviolate the integrity of insurance'" was not sufficiently specific to support a cause of action by an insured person against insurer for bad faith actions (quoting RCW 48.01.030)); cf. Swank v. Valley Christian Sch.,188 Wn.2d 663, 680, 398 P.3d 1108 (2017) (cause of action for violation of laws governing concussion and head injury procedures in youth sports consistent with statutory purpose of preventing concussions in youth sports); Tyner v. Dep't of Soc. & Health Servs., 141 Wn.2d 68, 80-82, 1 P.3d 1148 (2000) (cause of action for

parents harmed by negligent investigation consistent with statutory purpose of preserving family integrity); Bennett, 113 Wn.2d at 921 (cause of action for employees experiencing age discrimination consistent with statutory purpose of preventing age discrimination).

Additionally, implying such a right of action could encourage emergency healthcare providers to detain patients merely to avoid potential liability to third parties, seriously undermining the legislative goal of safeguarding the individual rights of such patients.

Thus, application of the Bennett factors does not support the imposition of an implied cause of action for third parties who are injured by mentally ill patients who were not detained by emergency care providers. Accordingly, we hold that RCW 71.05.050 does not create an implied cause of action.

D

Michael next contends that two published decisions, Dalen v. St. John Medical Center, 8 Wn. App. 2d 49, 436 P.3d 877 (2019), and Poletti v. Overlake Hospital Medical Center, 175 Wn. App. 828, 303 P.3d 1079 (2013), entitle him to a cause of action under RCW 71.05.050. We disagree.

In Dalen, we recognized that a patient who is wrongfully detained has a cause of action under RCW 71.05.050(3). 8 Wn. App. 2d. at 66. However, the Dalen opinion is distinguishable on several bases. First, the Dalen decision was premised on the fact that RCW 71.05.050(3) explicitly prohibits detentions outside of narrow circumstances. But improper detention is not the claim here. Instead, the claim here is that the respondents erred by not detaining the patient.

However, as previously set forth, there are no scenarios in which RCW 71.05.050(3) requires that emergency healthcare providers detain an individual. Dalen is not helpful in this regard.

The second basis for distinguishing the Dalen decision is even more compelling. In Dalen, the plaintiff was the patient herself—not a third party stranger to the patient/provider relationship. That is determinative concerning Dalen's inapplicability to this case.

The next cited case is even less pertinent. The Poletti opinion does not even address a claimed violation of RCW 71.05.050(3). Instead, it involved a common law wrongful death action initiated by the estate of a patient against a hospital which discharged the decedent shortly before she died in an automobile accident. Poletti, 175 Wn. App at 831. Accordingly, Poletti does not support the proposition that a cause of action is made available by statute to third parties. Instead, it holds that patients themselves may have such a common law cause of action.

E

Michael's briefing and shifting arguments, both on appeal and in the trial court, present analytical challenges. With that in mind, it appears that he also presently argues, as he did in the trial court, that RCW 71.05.120 creates a cause of action, entitling him to relief. We disagree.

Again, in pertinent part, RCW 71.05.120 states:

> (1) No officer of a public or private agency, nor the superintendent, professional person in charge, his or her professional designee, or attending staff of any such agency, nor any public official performing functions necessary to the

14

administration of this chapter, nor peace officer responsible for detaining a person pursuant to this chapter, nor any designated crisis responder, nor the state, a unit of local government, an evaluation and treatment facility, a secure withdrawal management and stabilization facility, or an approved substance use disorder treatment program shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence.

As the trial court correctly ruled, this section does not create an independent cause of action but, rather, serves to modify already existing causes of action. Our analyses of the Bennett considerations, in our evaluation of RCW 71.05.050, also control here. In addition, our review of the plain language of RCW 71.05.120 makes clear that the provision does not create a civil cause of action.

The contention that such a cause of action was created is the result of selecting out certain words from the passage. Thus, the words "No [person] . . . shall be civilly or criminally liable for performing duties pursuant to this chapter . . . PROVIDED, That such duties were performed in good faith and without gross negligence," is read to mean that such a cause of action *is created* when the conditions of the proviso are not met. This is not so.

Plainly, were it so, the quoted language would create both a civil cause of action and a criminal offense. But the provision clearly does not create a criminal offense. No degree of crime—class A felony, class B felony, class C felony, gross misdemeanor, misdemeanor—is set forth. No elements of a crime are set forth. Obviously, nothing in RCW 71.05.120(1) creates a criminal offense.

15

And if the language does not create a crime, it logically does not create a civil cause of action either. Instead, as discussed in our analysis of RCW 71.05.050, it merely serves to modify the requirements and applicability of preexisting rights of action.

The trial court correctly ruled that Michael's claim to the contrary fails.

IV

Finally, Michael contends that the trial court erred by denying his motion for reconsideration. Because the trial court did not base its decision on untenable grounds or reasons, we disagree.

We review trial court's rulings on motions for reconsideration for abuse of discretion. Wilcox v. Lexington Eye Inst., 130 Wn. App 234, 241, 122 P.3d 729 (2005). A trial court abuses discretion when its decision is based on untenable grounds or reasons. Wagner Dev., Inc. v. Fid. & Deposit Co. of Md., 95 Wn. App. 896, 906, 977 P.2d 639 (1999).

Michael's motion for reconsideration did not identify which of the nine grounds enumerated in CR 59(a) entitled him to reconsideration. Instead, he offered a set of hypothetical facts unrelated to his claim and asserted the existence of a special relationship akin to that in Volk. The trial court ruled that, even considering Michael's newly proffered hypothetical facts, no special relationship would exist under Volk.

Because this ruling was based on a correct interpretation of the law, it was not based on untenable or unreasonable grounds. The trial court did not err.

16

Affirmed.

Dwyer, J.

WE CONCUR:

Brunner, J.          Appelwick, J.

17