## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

NICHOLE POLETTI, as the Executor of
the Estate of Sherri Poletti, Deceased,

                  Respondent,

        v.

OVERLAKE HOSPITAL MEDICAL
CENTER,

                  Appellant,

        and

KING COUNTY,

                  Defendant.

No. 67821-3-I

ORDER GRANTING
MOTION TO PUBLISH
OPINION

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2013 MAY 31 PM 1:56

Non-party Kathy A. Cochran, attorney for Providence Health & Services-Washington, has filed a motion to publish the opinion filed April 1, 2013; Appellant Overlake Hospital Medical Center has filed a response to the motion to publish; and Respondent Nichole Poletti has not filed a response. The hearing panel has considered its prior determination and finds that the opinion will be of precedential value; Now, therefore, it is hereby

ORDERED that the written opinion shall be published and printed in the Washington Appellate Reports.

DONE this 31st day of May, 2013.

FOR THE COURT:

Becker, J.
_____
       Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| NICHOLE POLETTI, as the Executor of the Estate of Sherri Poletti, Deceased, | No. 67821-3-I |
| Respondent, | DIVISION ONE |
| v. | |
| OVERLAKE HOSPITAL MEDICAL CENTER, | :PUBLISHED OPINION |
| Appellant, | FILED: April 1, 2013 |
| and | |
| KING COUNTY, | |
| Defendant. | |

BECKER, J. — We accepted discretionary review in this wrongful death case to determine the standard by which a fact finder should judge Overlake Hospital's decision to discharge, rather than detain, a voluntarily admitted psychiatric patient. We conclude Overlake's decision to discharge the patient implicated the involuntary treatment act, chapter 71.05 RCW, and the hospital cannot be liable if the decision was made in good faith and without gross negligence.

Sherri Poletti, 58, suffered from bipolar disorder. Around Christmas Day 2006, she stopped taking her medications and began to drive aimlessly

throughout Washington, Oregon, and Canada. Late at night on December 30, 2006, she sought help at a hospital emergency room in Seattle, reporting sleeplessness, paranoia, hallucinations, and suicidal thoughts. She was referred and transported to Overlake Hospital Medical Center. There, she agreed to be admitted voluntarily into the psychiatric unit. Eighteen hours later, she said she felt better and asked to be discharged. A nurse tried to dissuade Poletti from leaving, but after a telephone consultation with the county designated mental health professional, she granted Poletti's request to be discharged. Poletti went home in a taxi but then resumed driving. She died not long afterwards, miles away, in a single-car crash.

In March 2008, Nichole Poletti, Sherri Poletti's daughter and the personal representative of her estate, filed a wrongful death suit against Overlake Hospital and King County. The estate claimed that Overlake was guilty of ordinary negligence for discharging Poletti without an in-person evaluation by a county designated mental health professional, and King County was guilty of gross negligence for failing to evaluate her in person, given their knowledge of her history of bipolar disorder. Overlake Hospital denied any negligence and asserted that it could be liable only for gross negligence as provided by the act, RCW 71.05.120(1).[1]

---

[1] Early in the case, the defendants obtained dismissal on summary judgment based on arguments not made here. This court reversed the judgment. Poletti v. Overlake Hosp. Med. Cntr., noted at 156 Wn. App. 1012 (2010). King County subsequently settled with Poletti's estate.

On September 23, 2011, the trial court granted the estate's motion for partial summary judgment and ruled that Overlake was not entitled to be judged by the gross negligence standard of care. The court found that "Overlake did not detain Sherri Poletti and the Involuntary Treatment Act was not implicated at any time." The court also ruled that Overlake breached the standard of care as a matter of law because it had failed to refer Poletti to a King County designated mental health professional for assessment, which the court determined was required by one of the hospital's own policies. The court certified its order for discretionary review under RAP 2.3, and this court granted Overlake's motion for discretionary review.

Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The issues presented require statutory interpretation. The court reviews issues of statutory interpretation and orders granting summary judgment de novo. Cerrillo v. Esparza, 158 Wn.2d 194, 199, 142 P.3d 155 (2006); In re Det. of Danforth, 173 Wn.2d 59, 68, 264 P.3d 783 (2011).

*Standard of Care*

The involuntary treatment act is primarily concerned with the procedures for involuntary mental health treatment of individuals who are at risk of harming themselves or others, or who are gravely disabled. Pertinent to this case, the act is also concerned with individuals who voluntarily seek inpatient mental health

treatment. Ordinarily, a person admitted voluntarily "shall be released immediately upon his or her request." RCW 71.05.050. If a hospital regards such a person as meeting the test provided in the act for involuntary commitment, the hospital "may detain such person for sufficient time" to allow the county designated mental health professional to assess the person:

> Nothing in this chapter shall be construed to limit the right of any person to apply voluntarily to any public or private agency or practitioner for treatment of a mental disorder, either by direct application or by referral. Any person voluntarily admitted for inpatient treatment to any public or private agency shall be released immediately upon his or her request. Any person voluntarily admitted for inpatient treatment to any public or private agency shall orally be advised of the right to immediate discharge, and further advised of such rights in writing as are secured to them pursuant to this chapter and their rights of access to attorneys, courts, and other legal redress. Their condition and status shall be reviewed at least once each one hundred eighty days for evaluation as to the need for further treatment or possible discharge, at which time they shall again be advised of their right to discharge upon request: PROVIDED HOWEVER, That if the professional staff of any public or private agency or hospital regards a person voluntarily admitted who requests discharge as presenting, as a result of a mental disorder, an imminent likelihood of serious harm, or is gravely disabled, they may detain such person for sufficient time to notify the county designated mental health professional of such person's condition to enable the [mental health professional] to authorize such person being further held in custody or transported to an evaluation and treatment center pursuant to the provisions of this chapter, which shall in ordinary circumstances be no later than the next judicial day.

RCW 71.05.050.

Another section of the statute exempts decision makers from liability for ordinary negligence under certain circumstances, substituting a gross negligence standard for duties performed pursuant to the act with regard to decisions

4

whether to "admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment."

> (1) No officer of a public or private agency, nor the superintendent, professional person in charge, his or her professional designee, or attending staff of any such agency, . . . nor any county designated mental health professional, . . . or an evaluation and treatment facility shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, That such duties were performed in good faith and without gross negligence.[2]

RCW 71.05.120(1).

Overlake contends its decision to discharge Poletti instead of detaining her for a formal evaluation by a county designated mental health professional is exempt from liability under RCW 71.05.120(1) if performed in good faith and without gross negligence. The estate defends the trial court ruling and argues that the involuntary treatment act does not apply at all because the hospital did not detain Poletti. The estate contends the ordinary medical negligence standard of RCW 7.70.040 should govern the case.

"Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature. We determine the intent of the legislature primarily from the statutory language. In the absence of ambiguity, we will give effect to the plain meaning of the statutory language." In re Marriage of Schneider, 173 Wn.2d 353, 363, 268 P.3d 215 (2011) (citations omitted).

---

[2] In a 1974 amendment, the legislature inserted the term "gross" before "negligence" in this proviso, indicating a decision to change the standard of care. RCWA 71.05.120.

The plain language of the act shows it applies to voluntary admissions for psychiatric treatment. How to deal with patients who voluntarily seek inpatient treatment is the subject matter of RCW 71.05.150. Poletti's estate cannot hold Overlake Hospital liable for failing to detain Sherri Poletti without invoking the immunity provision of RCW 71.05.120 because the only authority under which Overlake could have detained Poletti was under the involuntary treatment act. See Estate of Davis v. Dep't of Corr., 127 Wn. App. 833, 840-41, 113 P.3d 487 (2005). The trial court erred in concluding that Overlake's decision to discharge Poletti did not implicate the act.

The gross negligence standard provided by the act applies to a hospital's performance of "duties pursuant to this chapter." RCW 71.105.120(1). The estate argues that the only duty a hospital has under RCW 71.05.150 is to "detain" a patient. This is manifestly inaccurate. A person voluntarily admitted "shall be released immediately upon his or her request." The proviso makes an exception to this rule by authorizing a hospital to detain ("they may detain") if staff regard the person as presenting "an imminent likelihood of serious harm" or as "gravely disabled." "Shall" is mandatory while "may" is permissive. Thus, releasing a voluntarily admitted patient "immediately" upon request is the primary duty, and arguably the only duty, specified by this section of the act.

Moreover, application of the gross negligence standard provided by RCW 71.05.120(1) is not limited only to decisions to *detain* a person against her will. It covers decisions whether or not "to admit, discharge, release, administer

6

antipsychotic medications, or detain a person for evaluation and treatment." The act defines "admit" as a decision by a physician or psychiatric advanced registered nurse practitioner that a person should be examined or treated as a patient in a hospital. RCW 71.05.020(1). The act defines "discharge"[3] as the termination of hospital medical authority. RCW 71.05.020(15). The act defines "release" as the legal termination of a court-ordered commitment, and "detain" as the lawful confinement of a person under the provisions of the act, among other terms. RCW 71.05.020(37),(12). It is clear the legislature intended to provide limited immunity for a range of decisions that a hospital can make when a patient arrives, whether voluntarily or involuntarily, for evaluation and treatment. Overlake made a decision to discharge Poletti, pursuant to its duty under RCW 71.05.050 to release her immediately upon her request. Overlake cannot be held liable for this decision if it performed this duty in good faith and without gross negligence.

The estate argues that under this interpretation of the act, hospitals could immunize their entire course of treatment of a psychiatric patient merely by considering whether to have the patient evaluated for involuntary commitment. This scenario is overblown. The act's limited exemption from liability does not apply to all damages a psychiatric patient might suffer as a result of treatment decisions. The act applies in the present case to the extent the estate is claiming

---

[3] In 2000, the legislature amended RCW 71.05.120(1) to include the term "discharge" in the list of covered decisions. See RCWA 71.05.120.

7

that Poletti's death was caused by Overlake's decision to discharge her, a decision expressly mentioned in and covered by RCW 71.05.120(1).

"Statutes involving a deprivation of liberty are to be construed strictly." In re Det. of Swanson, 115 Wn.2d 21, 27, 793 P.2d 962, 804 P.2d 1 (1990). Detaining a patient against her will under the involuntary treatment act is a "'massive curtailment of liberty.'" In re LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986), quoting Humphrey v. Cady, 405 U.S. 504, 509, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972). The trial court's ruling would have the incongruous result of holding a hospital to the higher standard of ordinary negligence when discharging a *voluntarily* admitted psychiatric patient, while holding the hospital to the lower standard of gross negligence when releasing an *involuntarily* committed patient. Nothing in the statutory language evinces such an intent. A hospital presumptively must discharge a voluntary patient "immediately upon his or her request." RCW 71.05.050. While a hospital does have authority under the statute to detain a patient briefly to obtain a formal evaluation, the hospital will not face liability for discharging the patient without an evaluation as long as the decision is made in good faith and without gross negligence.

The estate contends that even if the decision to discharge Poletti implicates the act, the act's gross negligence standard applies only to the decision to discharge, while other acts of negligence are to be evaluated under the ordinary medical negligence standard. The estate points to a number of mistakes the hospital allegedly made in caring for Poletti during the eighteen

hours between her voluntary admission and discharge. For example, taken in the light most favorable to the estate, the record indicates the hospital did not monitor Poletti as it should have and as a result was unaware that she still was not getting much sleep. Also, there is evidence the charge nurse did not follow the attending physician's orders.

The estate's primary wrongful death theory is that the hospital's act of discharging Poletti caused her death. We leave for the trial court to consider on remand whether any hospital employees' acts that preceded or followed the decision to discharge may have caused Poletti's death, and what jury instructions would be appropriate to allow the estate to develop such a theory.

At the time of the court's certification for discretionary review, the estate had just moved to amend the complaint by adding a theory of lack of informed consent. The parties agreed at oral argument before this court that the motion was denied without prejudice because the parties had agreed to a stay. We express no opinion as to this motion.

*Breach As a Matter of Law*

The trial court ruled that the hospital's failure to follow its own policy requiring referral for a formal evaluation "constituted a breach of the standard of care as a matter of law." This second ruling is also before this court on discretionary review.

Overlake's policy No. 12548, entitled "Emergency Psychiatric Treatment and Transfers," provides as follows:

Policy: Individuals seeking care will be provided emergency establishing psychiatric treatment, within the capacity of the Emergency Department and Psychiatric Services. When additional specialized psychiatric inpatient services are clinically indicated, the patient will be offered admission to Overlake Hospital Medical Center Inpatient Psychiatric Unit or will be offered referral to another appropriate facility. Any arrangements for transfer of stabilized patients will provide for safe transport.

. . . .

C. *Patients in need of further psychiatric (inpatient) treatment,* but who are either not accepted for further treatment by other facilities, or *who do not consent to treatment, will be referred to the County Designated Mental Health Professional, for immediate evaluation.*

1. Patients evaluated by CDMHP will either be released or transferred, as directed by CDMHP
2. Rationale: Treatment Planning/Patient Safety[4]

The estate is free to argue to the finder of fact that Overlake's failure to refer Poletti for immediate evaluation by the county designated mental health professional was a breach of the standard of care established by the hospital's own policy. Detaining a voluntary patient to make such a referral is expressly permitted by RCW 71.05.050. The estate contends, however, that the hospital's breach has already been conclusively established because it was unrebutted that the hospital failed to refer Poletti for evaluation by the county designated mental health professional. What the estate overlooks is that the requirement for referral in policy No. 12548 (C.) applies only to patients who are "in need of further psychiatric (inpatient) treatment." Whether Poletti, at the time of her discharge,

---

4 Clerk's Papers at 627 (emphasis added).

was in need of further inpatient psychiatric treatment was disputed in the record below[5] and therefore it is a factual question that must be left for trial.

The trial court did not reach the issue of whether the evidence of gross negligence was so abundant that Overlake should be held grossly negligent as a matter of law. The estate invites the court to dispose of the case on this basis. We decline the invitation. There are factual issues that cannot be resolved on the limited record before us.

The rulings before us on discretionary review are both reversed.

Becker, J.

WE CONCUR:

Cox, J.

___

[5] E.g., Clerk's Papers at 771, Deposition of Dr. John Chiles at 72.