**FILED**

**DECEMBER 20, 2022**

**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

COURT OF APPEALS, DIVISION III, STATE OF WASHINGTON

| | |
|---|---|
| RHEA PERALTA, individually and as Personal Representative of the Estate of MIGUEL ANGEL PERALTA; and as Guardian of their minor children, L. PERALTA and S.M. PERALTA,<br><br>    Appellants,<br><br> v.<br><br>BRADLEY J. BLAKLEY, M.D., and JANE DOE BLAKLEY; EMERGENCY ASSOCIATES OF YAKIMA, PLLC; YAKIMA VALLEY MEMORIAL HOSPITAL ASSOCIATION d/b/a VIRGINIA MASON MEMORIAL HOSPITAL, a/k/a YAKIMA VALLEY MEMORIAL,<br><br>    Respondents,<br><br>JOHN DOES 1-10,<br><br>    Defendants. | No. 38616-3-III<br><br><br>ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING OPINION FILED NOVEMBER 8, 2022 |

   THE COURT has considered respondent's motion for reconsideration and is of the opinion the motion should be denied. Therefore,

IT IS ORDERED, the motion for reconsideration of this court's decision of November 8, 2022 is hereby denied.

IT IS FURTHER ORDERED the opinion filed November 8, 2022 is withdrawn and a new opinion will be filed herewith.

PANEL: Staab, Pennell, Lawrence-Berrey

FOR THE COURT:

_____
LAUREL SIDDOWAY
Chief Judge

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| RHEA PERALTA, individually and as | ) | No. 38616-3-III |
| Personal Representative of the Estate | ) | |
| of MIGUEL ANGEL PERALTA; and | ) | |
| as Guardian of their minor children, | ) | |
| L. PERALTA and S.M. PERALTA, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRADLEY J. BLAKLEY, M.D., and | ) | |
| JANE DOE BLAKLEY; EMERGENCY | ) | UNPUBLISHED OPINION |
| ASSOCIATES OF YAKIMA, PLLC; | ) | |
| YAKIMA VALLEY MEMORIAL | ) | |
| HOSPITAL ASSOCIATION d/b/a | ) | |
| VIRGINIA MASON MEMORIAL | ) | |
| HOSPITAL, a/k/a YAKIMA VALLEY | ) | |
| MEMORIAL, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |
| JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

STAAB, J. — Miguel Peralta checked himself into the emergency department at

Yakima Valley Memorial Hospital (Hospital) for suicidal ideation. The emergency room

physician, Bradley Blakley, M.D., determined that Peralta did not have suicidal ideations

and most likely did not meet the criteria for inpatient treatment. After discussing options,

Dr. Blakley discharged Peralta with information about mental health resources and

instructions to contact his primary care physician, follow up with a counselor, and return

to the emergency department if his symptoms worsened. The next day, Peralta died of

suicide.

Peralta's family and estate (collectively the Estate) filed a medical negligence

action against the Hospital and Dr. Blakley (collectively Respondents). Through its

expert, the Estate alleged that Dr. Blakley's evaluation of Peralta fell below the standard

of care. The Estate argued that the Respondents were negligent by not admitting or

detaining Peralta for inpatient treatment or providing an inadequate disposition-for-safety

plan upon his release. Following discovery, the trial court granted the Respondents'

motion for summary judgment, dismissing all of the Estate's claims. After the Estate's

motion for reconsideration was denied, the Estate filed this appeal.

We affirm the trial court's order dismissing the Estate's claim that the Respondents

should have voluntarily admitted or involuntarily detained Peralta because the Estate has

failed to produce evidence of gross negligence. However, the Estate's claim that Dr.

Blakley's disposition-for-safety plan was inadequate is subject to the ordinary medical

negligence standard.[1]  Since the Estate has provided evidence of each element of

negligence, the trial court erred in dismissing this claim on summary judgment.

BACKGROUND

Because this issue was decided in favor of the Respondents on summary judgment,

the following facts are set forth in a light most favorable to the Estate.

Miguel Peralta, accompanied by family members, voluntarily presented himself to

the Hospital's emergency room with suicidal ideation.  Peralta spoke with a triage nurse

who reported that he had increased stress, thoughts of harming himself for about a month,

and had been drinking heavily (although he was currently sober).  The nurse also reported

that Peralta had a history of type 2 diabetes but had not been eating and may not have

been taking his medications properly.  Peralta had no history of mental health issues.

Peralta next spoke with the primary emergency department nurse who recorded

that Peralta said he had been drinking too much (more than 10 drinks per day) and did not

have a plan to kill himself, although he had texted someone saying that he was at "the end

of [his] rope."  Clerk's Papers at 83, 99.  The nurse also conducted a standard suicide

screening questionnaire and notified the emergency department physician,

---

[1] The "ordinary medical negligence standard" is referring to the standard of care
outlined in chapter 7.70 RCW.

3

Dr. Blakley, of Peralta's score.[2]

Dr. Blakley then evaluated Peralta. He recorded the following notes on Peralta:

> 45 YOM [year old male] presents for increased SI [suicidal ideation]
> since Sunday
> Upon examination Negative SI, no HI [homicidal ideation], alert and
> oriented x3
> Advised that pt [patient] can be seen by MHP [mental health
> professional]. Advised of MHP process. Advised against calling MHP.
> Will provide contact for counselor so pt can set up follow up
> appointment. Pt agreed to follow up with counselor. Pt is cleared for
> discharge. Pt understands and agrees.

*Id.* at 101. Dr. Blakley advised Peralta against calling in a mental health professional to

the emergency department to see Peralta because he did not believe Peralta met the

inpatient criteria. Nonetheless, he indicated that Peralta could choose to be seen by a

mental health professional to determine whether inpatient services were necessary.

Peralta declined to do so and agreed to follow up with a counselor. A staff member at the

emergency department had ordered alcohol, drug, and metabolic tests for Peralta, but Dr.

Blakley subsequently canceled these tests.

Dr. Blakley sent Peralta home with a diagnosis of "'acute stress reaction.'" *Id.*

(capitalization omitted). He directed Peralta to follow up with his primary care provider

---

[2] Peralta's score on this assessment was a 9, but the record does not provide any
reference, so we do not assign any significance to this score.

in one to two days and return to the emergency room if his symptoms worsened. Peralta was given a crisis hotline card, and he and his family were advised that they could call at any time. Peralta was also provided with information for a counselor.

The next day, Peralta shot himself and died from his injuries.

*Negligence Claim and Summary Judgment*

Peralta's wife, minor children, and Estate filed a lawsuit against Dr. Blakley and the Hospital for medical negligence. Shortly thereafter, the Respondents moved for summary judgment, arguing that the Estate had failed to identify an expert witness who could testify to breach of care and proximate cause. The Respondents also argued that medical decisions on whether to admit or detain Peralta for inpatient mental health treatment were covered by the involuntary treatment act (ITA), chapter 71.05 RCW, which required the Estate to prove gross negligence rather than ordinary medical negligence.

The Estate responded that the ITA did not apply and that ordinary medical negligence was the applicable standard. Alternatively, the Estate argued that even if the ITA did apply, there was a genuine issue of material fact as to gross negligence. As evidence of breach and causation, the Estate submitted the declaration of Richard Cummins, M.D., an experienced emergency department physician. Through his

5

declaration, Dr. Cummins testified that Dr. Blakley breached his duty to Peralta in four ways: (1) failure to assess Peralta's risk for self-harm or suicide, (2) failure to perform a proper medical evaluation or clearance of Peralta, (3) failure to expand and solidify the risk assessment of Peralta by consulting with an available mental health professional, and (4) failure to formulate and initiate a proper disposition-for-safety plan for Peralta. Dr. Cummins concluded that each of these breaches amounted to gross negligence.

As to the alleged breach of duty to adequately assess Peralta's risk for self-harm, Dr. Cummins declared that Dr. Blakley failed to gather details on Peralta's suicidal thoughts or ideations. Dr. Cummins testified that Dr. Blakley should have assessed Peralta for well-known risk factors, including "active depression, previous episodes of suicidal thoughts, previous suicide attempts, or alcohol/other drug abuse." *Id*. at 147. Commenting on the records from Peralta's emergency room visit, Dr. Cummins noted Dr. Blakley failed to explain his medical assessment of Peralta and that a "reasonably prudent emergency physician must explicitly state . . . his professional assessment of the patient's risk for suicide, and the information upon which he based that risk assessment." *Id*. at 143-44. In addition, Dr. Cummins opined that "a reasonable prudent ED [emergency department] physician" evaluating a patient such as Peralta "[would] specifically state a risk assessment." *Id*. at 147-48.

6

The second identified breach by Dr. Cummins was Dr. Blakley's failure to perform a proper medical evaluation of Peralta. Dr. Cummins testified that a reasonably prudent emergency physician would have tested for drugs, alcohol, and metabolic abnormalities to determine if they contributed to Peralta's suicidal thoughts.

The third breach identified by Dr. Cummins was Dr. Blakley's failure to consult with available mental health professionals. Dr. Cummins noted that an on-call psychiatrist was available at the Hospital. He concluded that had Dr. Blakley performed an adequate suicide risk assessment, "he would have recognized that Mr. Peralta may be at risk for suicide and may need to be involuntarily detained for protection and further treatment." *Id.* at 149 (underlining omitted). Without explaining the connection, Dr. Cummins testified that "if Dr. Blakley had obtained a DCR [designated crisis responder] evaluation, it would have, on a more likely than not basis, prevented Mr. Peralta's [death by] suicide." *Id.*

In his fourth and final alleged breach of duty, Dr. Cummins declared that Dr. Blakley failed to "formulate and initiate a proper disposition-for-safety plan for Mr. Peralta." *Id.* Dr. Cummins criticized the lack of detail in Dr. Blakley's discharge plan as outlined in Dr. Blakley's notes. Specifically, Dr. Cummins asserted that Dr. Blakley failed to confirm that Peralta's primary care physician was available and failed to detail

the circumstances under which Peralta should return to the emergency room. Dr. Cummins also pointed out that there was no indication that Dr. Blakley instructed family members to remove weapons or check on Peralta. In the end, Dr. Cummins concluded that "[a] proper disposition-for-safety plan would have prevented, on a more likely than not basis, Mr. Peralta's final act of suicide." *Id*. at 150.

Dr. Cummins concluded his declaration by asserting that Dr. Blakley's only responsibility was to determine if Peralta was in imminent danger of killing himself and whether he needed to be prevented from doing so. Dr. Cummins concluded that there "was a direct causal connection between Dr. Blakley's failure in executing his professional responsibilities and Mr. Peralta's unfortunate death." *Id*. at 151.

During oral argument on the motion for summary judgment, the superior court focused on the standard of care and evidence of causation. The Estate argued that had Dr. Blakley conducted an adequate risk assessment and medical evaluation, he would have consulted a mental health professional, who would have admitted or detained Peralta. The superior court pointed out that if the decision to admit or detain needs to be made by a mental health professional, then the Estate needed to provide the testimony of such an expert to prove causation. After hearing argument, the superior court granted the Respondents' motion for summary judgment.

8

After the order on summary judgment was entered, the Estate filed a timely motion for reconsideration. As part of their motion for reconsideration, the Estate included a supplemental declaration from Dr. Cummins and a declaration from Stephanie Lopez, M.D.

In his supplemental declaration, Dr. Cummins repeated his earlier conclusion that Dr. Blakley's suicide risk assessment was inadequate and articulated the Estate's theory of causation. Dr. Cummins contended that had Dr. Blakley conducted an adequate suicide risk assessment, he would have concluded that Peralta presented an imminent risk of serious harm. Once he recognized the elevated risk of harm, Dr. Blakley would have activated a formal investigation and evaluation by a designated crisis responder under the ITA. A "DCR evaluation would have, on a more likely than not basis, resulted in Mr. Peralta being taken into emergency custody in an evaluation and treatment facility." *Id.* at 253. Once in custody, Peralta would have been prevented from leaving and prevented from dying of suicide several hours later. Alternatively, given that Peralta presented himself to the emergency room for mental health treatment, he would have likely consented to voluntary admission for inpatient treatment.

The Estate also submitted a declaration from Stephanie Lopez, M.D. Dr. Lopez is a board certified psychiatrist. Similar to Dr. Cummins, Dr. Lopez testified to the same

four alleged breaches of duty: (1) failure to adequately conduct a suicide risk assessment, (2) failure to perform a medical evaluation, (3) failure to consult with available mental health professionals, and (4) failure to provide an adequate disposition plan. She further testified that an adequate risk assessment would have resulted in an effective disposition plan, including whether Peralta could be safely released home or needed to be admitted for inpatient psychiatric treatment.

The Respondents moved to strike or exclude the postsummary judgment declarations. In support of this motion, the Respondents argued that these declarations were not newly discovered, and exclusion was supported by application of the *Burnet*[3] factors. The superior court granted the Respondents' motion to exclude after concluding that the new declarations did not constitute newly discovered evidence. The superior court then denied the Estate's motion for reconsideration. The Estate appeals.

## ANALYSIS

### 1. STANDARD OF REVIEW

We review de novo the superior court's order dismissing the Estate's claims on summary judgment. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Evidence is considered in a light most favorable to the nonmoving party. *Id.* Summary

---

[3] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

10

judgment is appropriate only if there are no genuine issues of material fact and the

moving party is entitled to judgment as a matter of law. *Id.*

Generally, to prevail in a medical negligence claim, a plaintiff must establish:

(a) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances;

(b) Such failure was a proximate cause of the injury complained of.

RCW 7.70.040(1). "A defendant moving for summary judgment in a medical negligence

case bears the initial burden of showing that (1) there is no genuine issue of material fact

or, alternatively, (2) that the plaintiff lacks competent evidence to support an essential

element of [their] claim." *Davies v. Holy Family Hosp.*, 144 Wn. App. 483, 492, 183

P.3d 283 (2008), *abrogated on other grounds by Frausto v. Yakima HMA, LLC*, 188

Wn.2d 227, 393 P.3d 776 (2017).

2.  STANDARD OF CARE

The parties dispute the applicable standard of negligence. The Hospital and Dr.

Blakley contend the Estate's claim that Dr. Blakley or the Hospital should have admitted

or detained Peralta falls within the ambit of the ITA and are subject to the ITA's gross

negligence standard. The Estate asserts that Peralta voluntarily presented for treatment

and would have likely agreed to voluntary treatment. The Estate contends that the ITA

does not apply to decisions on whether to admit a patient for inpatient behavioral health treatment voluntarily. Accordingly, the Estate maintains that an ordinary medical negligence standard applies to its claims that Peralta should have been admitted or detained.

Whether the ITA applies to the Estate's claim requires us to interpret the statute. Statutory interpretation is a question of law we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761, 317 P.3d 1003 (2014). "The goal of the inquiry is to ascertain and carry out the legislature's intent." *Id*. at 762. Where possible, we give effect to a statute's "plain meaning" as an expression of the legislature's intent. *Id*. (quoting *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)). "This plain meaning is derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Id*. (quoting *Campbell & Gwinn*, 146 Wn.2d at 11).

The ITA provides procedures for the detention and treatment of people suffering from a mental health disorder who present an imminent risk of harm to themselves or others or are gravely disabled. RCW 71.05.153(3). It also applies to persons voluntarily seeking inpatient mental health treatment. RCW 71.05.050.

The ITA contains a provision exempting decision-makers from an ordinary medical negligence standard and instead subjecting them to a gross negligence standard for specific duties performed according to the chapter:

> No officer of a public or private agency . . . shall be civilly or criminally liable for performing duties pursuant to this chapter with regard to the decision of whether to admit, discharge, release, administer antipsychotic medications, or detain a person for evaluation and treatment: PROVIDED, that such duties were performed in good faith and without gross negligence.

RCW 71.05.120(1). Because this statutory exemption from ordinary medical liability is in derogation of the common law, we strictly construe the grant of immunity. *Michaels v. CH2M Hill, Inc.*, 171 Wn.2d 587, 600, 257 P.3d 532 (2011).

The statute's plain language applies when a decision is made on whether to admit or detain a patient for evaluation and treatment, whether voluntarily or involuntarily. The chapter defines "admission" or "admit" as "a decision by a physician, physician assistant, or psychiatric advanced registered nurse practitioner that a person should be examined or treated as a patient in a hospital." RCW 71.05.020(1). On the other hand, "detain" is defined as "the lawful confinement of a person, under the provisions [of the ITA]." RCW 71.05.020(17). In other words, a person can be admitted voluntarily under the ITA without being detained. "It is clear the legislature intended to provide limited immunity for a range of decisions that a hospital can make when a patient arrives, whether

13

voluntarily or involuntarily, for evaluation and treatment." *Poletti v. Overlake Hosp. Med. Ctr.*, 175 Wn. App. 828, 835, 303 P.3d 1079 (2013).

To the extent that the Estate claims that Dr. Blakley should have consulted a mental health professional or designated crisis responder to determine if Peralta should have been voluntarily admitted or involuntarily detained, the decision falls within the protections provided by the ITA.

Nevertheless, the Estate argues that the ITA does not apply here because Peralta voluntarily presented himself for treatment. The Estate contends that the ITA applies only to individuals who will not voluntarily seek treatment. In support of its position, the Estate relies on the opinions of Dr. Cummins and a narrow reading of the statute that is unsupported by case law. In his declaration, Dr. Cummins opines that the ITA does not apply under these circumstances. This is a legal opinion, and there is nothing in Dr. Cummins' declaration that qualifies him to give legal opinions.

In a similar case, Division One of this court found that the ITA applies to patients admitted voluntarily and detained involuntarily. *See Poletti*, 175 Wn. App. 828. "[A]pplication of the gross negligence standard provided by [the ITA] is not limited only to decisions to *detain* a person against [their] will." *Id*. at 835 (emphasis added). "It covers decisions whether or not 'to admit, discharge, release, administer antipsychotic

medications, or detain a person for evaluation and treatment.'" *Id.* (quoting RCW

71.05.120(1)). The ITA provides "limited immunity for a range of decisions that a

hospital can make when a patient arrives, *whether voluntarily or involuntarily*, for

evaluation and treatment." *Id.* (emphasis added).

The Estate's attempts to distinguish *Poletti* fail. The Estate points out that, unlike

Peralta, the patient in *Poletti* was voluntarily admitted for psychiatric treatment before

requesting to leave. The Estate claims this distinction is critical because, as it argues,

"[a] patient must be admitted to trigger RCW 71.05.050." Appellants' Reply Br. at 8.

Our focus, however, is on the appropriate standard of care under RCW 71.05.120. As

this court explained in *Poletti*, this statute establishes the standard of care for decisions

on "whether or not" to admit or detain an individual for mental health treatment. *See*

*Poletti*, 175 Wn. App. at 835.

The Estate also argues that under *Volk v. DeMeerleer*, 187 Wn.2d 241, 386 P.3d

254 (2016), the ordinary medical negligence standard of care must apply. In *Volk*, the

Supreme Court determined that an ordinary medical negligence standard applied in an

action brought against a psychiatrist after their patient expressed suicidal and homicidal

thoughts and then violently attacked third persons. *Id.* at 246, 274-76. However, also in

*Volk*, the court determined that the psychiatrist had a special relationship with the patient

15

due to a nine-year psychiatrist-patient relationship and therefore was subjected to a higher standard of care that included a duty to third parties. *Id*. at 246, 274-75. The Estate is not arguing there was a special relationship here. Accordingly, the holding in *Volk* is not applicable here.

Alternatively, the Estate contends that Peralta presented himself voluntarily and could have been admitted to the Hospital's inpatient mental health ward without being detained under the ITA. This argument suggests that a patient could be voluntarily admitted for inpatient mental health treatment outside the scope of the ITA. This is contrary to the clear language of the ITA. Under RCW 71.05.050(1), the ITA applies to "[a]ny person voluntarily admitted for inpatient treatment to any public or private agency . . . ." Likewise, RCW 71.05.120(1) exempts a treatment facility from liability for "performing duties pursuant to this chapter with regard to the decision of whether to admit . . . or detain a person for evaluation and treatment."

Here, Peralta voluntarily sought mental health treatment from the Hospital's emergency department, presenting with suicidal ideation. Dr. Blakley examined Peralta and determined that he did not present a danger to himself or others, and it would not be necessary to immediately consult with a mental health professional or designated crisis responder. Instead, Dr. Blakley created a disposition plan for Peralta to follow and

released him.  Peralta then returned home.  Dr. Blakley's decision on whether or not to admit or detain Peralta falls squarely within the ambit of the ITA.  Accordingly, the Estate's claim that Dr. Blakley and the Hospital were negligent in their decisions to not admit or detain Peralta are subject to the gross negligence standard of care.  As we note below, however, the Estate's claim that Dr. Blakley's disposition-for-safety plan was inadequate does not fall within the decision to admit or detain Peralta.

3. WHETHER THE ESTATE PRESENTED SUFFICIENT EVIDENCE OF BREACH OF DUTY UNDER A GROSS NEGLIGENCE STANDARD

On appeal, Dr. Blakley argues, as he did in the trial court, that the Estate failed to produce evidence demonstrating a breach of the gross negligence standard.  The Estate responds that Dr. Cummins testified that Dr. Blakley's alleged breach rose to the level of gross negligence.

To survive summary judgment on its claims that Dr. Blakley should have admitted or detained Peralta, the Estate must produce evidence that Dr. Blakley's actions failed to follow the gross negligence standard of care and that this failure caused Peralta's death. *See Keck*, 184 Wn.2d at 371.  "Gross negligence" is negligence substantially and appreciably greater than ordinary medical negligence. *Nist v. Tudor*, 67 Wn.2d 322, 331, 407 P.2d 798 (1965).  "To avoid summary judgment on gross negligence, a plaintiff must present 'substantial evidence that the defendant failed to exercise slight care under the

17

circumstances presented, considering both the relevant failure and, if applicable, any relevant actions that the defendant did take.'" *Dalen v. St. John Med. Ctr.*, 8 Wn. App. 2d 49, 61-62, 436 P.3d 877 (2019) (quoting *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 343, 429 P.3d 1071 (2018)). A showing of an "incomplete or even unreasonable assessment" is not necessarily sufficient to establish gross negligence under the ITA. *Id.* at 62. The Supreme Court explained the appropriate analysis in *Harper*:

> In determining whether the plaintiff has provided substantial evidence, the court must look at all the evidence before it, evidence that includes both what the defendant failed to do *and* what the defendant did. If a review of all the evidence suggests that reasonable minds could differ on whether the defendant may have failed to exercise slight care, then the court must deny the motion for summary judgment. But if a review of all the evidence reveals that the defendant exercised slight care, and reasonable minds could not differ on this point, then the court must grant the motion.

*Harper*, 192 Wn.2d at 346.

Here, it is clear that Peralta received at least slight care. The evidence demonstrates that Peralta was assessed by two separate nurses when he arrived at the emergency department. The second nurse conducted a standard suicide screening questionnaire and notified Dr. Blakley of the results. After considering the information gathered by the nurses, Dr. Blakley assessed Peralta and diagnosed him with acute stress reaction. While Dr. Blakley advised against calling in a mental health professional to the emergency department, he nonetheless provided this option to Peralta. When Peralta

18

declined, Dr. Blakley provided a disposition-for-safety plan that included Peralta

following up with a counselor and his primary care physician, providing him with a

number for a crisis hotline, and instructing him to return to the emergency department if

his symptoms worsened.

In his declaration, Dr. Cummins opined that Dr. Blakley's assessment was

inadequate. Although Dr. Cummins repeatedly states that Dr. Blakley's actions

constituted gross negligence, these assertions are conclusory. To survive summary

judgment, a plaintiff must produce competent evidence on an element of a negligence

claim. *Reyes v. Yakima Health Dist.*, 191 Wn.2d 79, 86, 419 P.3d 819 (2018). Generally,

this evidence is presented by a qualified expert witness. *Id.* Simply alleging that Dr.

Blakley was grossly negligent is not enough. Dr. Cummins needs to link the appropriate

standard of care with the facts in this case. *Id*. at 87.

We reach the same conclusion even considering additional declarations provided

by the Estate in support of its motion for reconsideration. In his supplemental

declaration, Dr. Cummins repeated his earlier conclusion that Dr. Blakley's assessment

was inadequate. Likewise, Dr. Lopez also opined that Dr. Blakley failed to perform an

adequate or proper assessment and evaluation, but she acknowledged that Dr. Blakley

reviewed the information obtained by the nurses, met with Peralta, and discussed

Peralta's reasons for appearing at the emergency department, diagnosed him, and provided a disposition-for-care plan. While testifying that Dr. Blakley failed to conduct a proper assessment, neither Dr. Cummins nor Dr. Lopez suggested or testified that Dr. Blakley provided less than slight care in his assessment and evaluation.

Even construing the facts in the light most favorable to the Estate, it is clear that the Respondents' actions rose to slight care and did not constitute a breach of duty under gross negligence. Consequently, the Estate has failed to present sufficient evidence of breach under a gross negligence standard of care for its claim that the Respondents should have admitted or detained Peralta.

4. CLAIM PERTAINING TO DISPOSITION-FOR-SAFETY PLAN

The Estate also claims that Dr. Blakley failed to provide Peralta and his family with an adequate disposition-for-safety plan. The Estate claims that had Dr. Blakley conducted an adequate assessment and evaluation, he would have recognized that Peralta was at imminent risk for injury or death and would have provided a more thorough and detailed disposition-for-safety plan. The Estate contends that the plan should have included Peralta's family and covered access to weapons, the effect of alcohol and metabolic abnormalities on depression and suicidal thoughts, details on resources

available from the hotline, and more details on when to return to the emergency

department.

We agree with the Estate that instructions included in a disposition-for-safety plan

are not part of the decision to admit, detain, or discharge Peralta. Rather, the instructions

are provided after the decision to discharge is made. As we noted above, the breadth of

this statutory grant of immunity is strictly construed. *Michaels*, 171 Wn.2d at 600. The

statute grants limited immunity to a treating physician while "performing duties pursuant

to [the ITA] with regard to the decision of whether to admit, discharge, . . . or detain a

person for evaluation and treatment." RCW 71.05.120(1).

The Estate's last claim is that, after deciding to discharge Peralta, Dr. Blakley

provided instructions pursuant to a disposition-for-safety plan that were inadequate. In

other words, the Estate's claim is not that the decision to discharge caused the harm; it is

that instructions given after the decision to discharge caused the harm. While the statute

provides limited immunity with regard to "the decision" to discharge, under a strict

construction, it does not provide immunity for all treatment decisions beyond the decision

to discharge.

The Respondents argue that even if ordinary medical negligence applies, the claim

was properly dismissed on summary judgment because the Estate failed to produce

evidence of causation: proof that a more thorough disposition-for-safety plan would have prevented Peralta's death by suicide.

"'A proximate cause of an injury is defined as a cause which, in a direct sequence, unbroken by any new, independent cause, produces the injury complained of and without which the injury would not have occurred.'" *Rounds v. Nellcor Puritan Bennett, Inc.*, 147 Wn. App. 155, 162, 194 P.3d 274 (2008) (quoting *Fabrique v. Choice Hotels Int'l, Inc.*, 144 Wn. App. 675, 683, 183 P.3d 1118 (2008)). Proximate cause requires a showing of both cause in fact and legal causation. *Id.*

"Cause in fact concerns 'the but for consequences of an act, or the physical connection between an act and the resulting injury.'" *Id.* at 162 (quoting *Hartley v. State*, 103 Wn.2d 768, 778, 698 P.2d 77 (1985)). In medical negligence cases, to show cause in fact, a plaintiff generally must show that they would not have been injured but for the health care provider's failure to adhere to the standard of care. *Mohr v. Grantham*, 172 Wn.2d 844, 850, 262 P.3d 490 (2011). This generally requires expert testimony. *Rounds*, 147 Wn. App. at 162-63.

"'[T]he expert testimony must be based on facts in the case, not speculation or conjecture.'" *Id.* at 163 (quoting *Seybold v. Neu*, 105 Wn. App. 666, 677, 19 P.3d 1068 (2001)). "'The testimony must be sufficient to establish that the injury-producing

22

situation probably or more likely than not caused the subsequent condition, rather than the accident or injury might have, could have, or possibly did cause the subsequent condition.'" *Id*. (quoting *Merriam v. Toothaker*, 9 Wn. App. 810, 814, 515 P.2d 509 (1973)). Moreover, the testimony must be based on a reasonable degree of medical certainty. *Id*. "The expert's opinion must be based on fact and cannot simply be a conclusion or based on an assumption if it is to survive summary judgment." *Volk*, 187 Wn.2d at 277. "[I]n cases involving alleged medical negligence, if a reasonable person could infer, from the facts, circumstances, and medical testimony, that a causal connection exists, the evidence is sufficient to survive summary judgment." *Attwood v. Albertson's Food Ctrs., Inc.*, 92 Wn. App. 326, 330, 966 P.2d 351 (1998).

Because the Respondents moved for summary judgment, the burden shifted to the Estate to produce medical expert testimony on the issue of causation. While the Estate raised four theories of breach, it articulated only two theories of causation. The Estate's first theory of causation—that had Peralta been admitted or detained for inpatient treatment he would not have died of suicide—is disposed of above because the Estate failed to provide evidence of gross negligence. The Estate's second theory of causation is that had Dr. Blakley conducted an adequate assessment and evaluation, he would have

provided Peralta and his family with a more thorough disposition-for-safety plan, and

Peralta would not have died of suicide.

The evidence presented by the Estate, even in Dr. Cummins's initial declaration,

provided prima facie evidence of duty, breach, causation, and injury with respect to this

claim. Dr. Cummins testified that a reasonably prudent emergency department physician

would have conducted a more thorough assessment for risk of self-harm and suicide,

would have run tests to determine if alcohol, drugs, or metabolic abnormalities were

contributing to feelings of depression and suicidal ideations, and would have included

Peralta's family in devising a more thorough disposition-for-safety plan. A reasonably

prudent plan would have determined if Peralta's primary care physician was available for

an additional evaluation, would have clearly identified the circumstances under which

Peralta should return to the emergency department or call the crisis hotline, would have

explained what services were available through the hotline, and would have determined if

Peralta had access to weapons. Finally, Dr. Cummins opined that an adequate

disposition-for-safety plan would have, on a more likely than not basis, prevented Peralta

from dying of suicide. This is sufficient to raise a genuine issue of fact as to each element

of negligence.

24

The Respondents contend that, given the information provided by Peralta and his family, Dr. Blakley had no duty to conduct additional tests or provide additional information in the disposition-for-safety plan. The Hospital characterizes the Estate's evidence as "speculative." Yakima Valley Mem'l Hosp. Ass'n's Response Br. at 29. We disagree. Under an ordinary medical negligence standard, Dr. Cummins' testimony connected the dots between duty, breach, causation, and injury for this claim. The arguments raised by Dr. Blakley and the Hospital go toward the credibility of the evidence, which is a question for the jury.

Finally, we note that the Estate challenges the trial court's order striking the post-summary judgment declarations provided in support of its motion for reconsideration. Because we find that any error in striking the declarations was harmless, we do not decide this issue. Even if the trial court had considered these declarations, it would not change our outcome.

We affirm dismissal of the Estate's claims that Dr. Blakley and the Hospital should have admitted or detained Peralta. We reverse dismissal of the Estate's claims that Dr. Blakley should have provided a more thorough disposition-for-safety plan.

No. 38616-3-III
*Peralta v. Blakley*


Affirm in part, reverse in part and remand for further proceedings.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.

26